**POLYMER TECHNOLOGIES, INC.,
and Walter Polovina, Plaintiffs–
Appellants,**

v.

**Andrew P. BRIDWELL, H.A. Spec. Co.,
and Westmark AG Group, Inc.,
Defendants–Appellees.**

No. 96–1182.

United States Court of Appeals,
Federal Circuit.

Dec. 23, 1996.

Kristi Blazer, Luxan & Murfitt, Helena, Montana, argued, for plaintiffs-appellants. Of counsel was Donavon Lee Favre, of Glasgow, Virginia.

John H. Grant, Jackson, Murdo, Grant & McFarland, P.C., Helena, Montana, argued, for defendants-appellees.

William P. Driscoll, Gough, Shanahan, Johnson & Waterman, Helena, Montana, submitted a separate brief on behalf of defendant-appellee Westmark AG Group, Inc. With him on the brief was William L. Mac-Bride, Jr.

Before MAYER, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Polymer Technologies, Inc. and Walter Polovina (collectively "Polymer") appeal from the order of the United States District Court for the District of Montana denying their motion for a preliminary injunction. *Polymer Techs., Inc. v. Bridwell*, No. CV 9567H–CCL (D.Mont. Jan. 12, 1996). Polymer sought to enjoin Andrew P. Bridwell, H.A. Spec. Co., and Westmark Ag Group, Inc. (collectively "Westmark") from manufacturing, marketing, and selling Climate brand foliar protective coating, acts that Polymer alleges, *inter alia*, infringe U.S. Patent 4,783,342. Because the district court abused its discretion by basing its denial of Polymer's motion solely on the clearly erroneous finding that Westmark rebutted the presumption of irreparable harm, we vacate and remand.

## BACKGROUND

Polymer Technologies, Inc., a Florida corporation founded by Ed Nolan, manufactures and sells a water-based, foliar protective coating known by the trade name Crop–Life. When applied to living plants, Crop–Life protects against frost, drought, and other adverse conditions. Since 1987, Polymer Technologies has made and sold Crop–Life under an exclusive license agreement with its inventor, Walter Polovina. This agreement provided that Polovina receive royalties based upon Polymer Technologies' sales of Crop–Life as well as financial assistance in preparing a patent application directed to his invention. That application matured into the '342 patent, which issued November 8, 1988 and claims a method for preserving fruits, vegetables, flowers, or living plants by applying a specified polymeric film coating.

In November 1994, Ed Nolan died suddenly and his widow, Joanna Nolan, assumed control of the company even though she had no prior business experience. Soon thereafter, Andrew Bridwell, who had worked for Polymer Technologies for eight years and served as its president, resigned after a dispute with the company. He moved to Montana and founded H.A. Spec. Co. to market Climate, a water-based polymer that Polymer alleges to be identical to Crop–Life. In order to manufacture Climate on a large scale, Bridwell contracted with Westmark Ag Group, Inc., an Arizona corporation. From July 31, 1995 through October 30, 1995, Westmark Ag Group manufactured 7630 gallons of Climate for Bridwell. Bridwell, apparently through H.A. Spec. Co., sold Climate for approximately $65,000. Meanwhile, Polymer Technologies' sales of Crop–Life declined from approximately $1.25 million in 1993 to only $350,000 for the first ten months of 1995. Polovina's royalty income also diminished from approximately $42,000 in 1993 to $3,000 for the first ten months of 1995.

On November 14, 1995, Polymer brought this infringement action[1] in the United States District Court for the District of Montana and filed a motion for a preliminary injunction seeking to prohibit Westmark's manufacture, marketing, and sale of Climate. On December 7, the court held a hearing on Polymer's motion and approximately one month later issued an order denying the motion.

The district court noted that four factors are considered in determining whether a preliminary injunction should issue in a patent case, but the court analyzed only one of those factors: irreparable harm. Relying upon our decision in *Reebok International Ltd. v. J.*

---

[1] Polymer sought injunctive relief and the recovery of damages and attorney fees under a variety of theories including patent infringement, copyright infringement, unfair competition, and misappropriation of trade secrets. It is not clear whether Polymer alleges that Westmark directly infringes the '342 patent, which claims only a method, under 35 U.S.C. § 271(a) (1994), or indirectly infringes the patent under § 271(b) or (c).

*Baker, Inc.,* 32 F.3d 1552, 31 USPQ2d 1781 (Fed.Cir.1994), the district court afforded Polymer a presumption of irreparable harm, but found that Westmark had rebutted the presumption. In support of this finding, the court relied upon two subsidiary findings that (1) Ed Nolan's death, Joanna Nolan's inexperience, and competition from other companies which were not sued by Polymer contributed substantially to Polymer's lost sales and (2) any harm suffered by Polymer as a result of Westmark's activities could "be fully compensated by money damages" because "damages may be finite in this case due to the seemingly limited market and may therefore be readily calculated if it is later determined that [Westmark is] infringing upon the patent." Polymer appeals to this court, challenging the denial of the motion for preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292(c) (1994).

## DISCUSSION

■ "The grant or denial of a preliminary injunction pursuant to 35 U.S.C. § 283 is within the discretion of the district court." *Novo Nordisk of North Am., Inc. v. Genentech, Inc.,* 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996). Accordingly, a trial court's decision denying a preliminary injunction will be overturned on appeal only upon a showing that the court "abused its discretion, committed an error of law, or seriously misjudged the evidence." *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Novo Nordisk,* 77 F.3d at 1367, 37 USPQ2d at 1775.

■ As the moving party, Polymer had to establish its right to a preliminary injunction in light of four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction were not granted; (3) the balance of the hardships and (4) the impact of the injunction on the public interest. *Nutrition 21 v. United States,* 930 F.2d 867, 869, 18 USPQ2d 1347, 1348–49 (Fed.Cir.1991). If Polymer clearly established the first factor (by making a "clear showing" of both validity and infringement), it was entitled to a rebuttable presumption in its favor regarding the second factor. *See Smith Int'l,* 718 F.2d at 1581, 219 USPQ at 692. The district court did not analyze whether Polymer clearly established the first factor. Instead, relying on *Reebok,* 32 F.3d at 1557, 31 USPQ2d at 1784, it afforded Polymer the benefit of the presumption of irreparable harm. In so doing, the district court assumed that Polymer had clearly shown a likelihood of success. It did not consider the remaining two factors.

Polymer argues that because our precedent requires a trial court to consider all four equitable factors, the district court committed legal error by considering only irreparable harm. Westmark responds that the district court properly followed our guidance in *Reebok* by giving Polymer the benefit of a presumption of irreparable harm and then, after considering the evidence and finding that Westmark rebutted that presumption, denying Polymer's motion.

We have required that a trial court engage in "an evaluation and balancing of the [four] above-listed factors and the circumstances surrounding each.... [N]one may be ignored" before *granting* a preliminary injunction. *Illinois Tool Works, Inc. v. Grip–Pak, Inc.,* 906 F.2d 679, 681, 15 USPQ2d 1307, 1309 (Fed.Cir.1990); *see also Payless Shoesource Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 988, 27 USPQ2d 1516, 1518 (Fed.Cir.1993) ("In deciding whether a moving party is entitled to a preliminary injunctive relief under section 283, a district court must consider [the four factors].").

■ Before *denying* a motion for preliminary injunction, an analysis of each of the four factors is generally appropriate "for reasons of judicial economy and greatly aids appellate review." *Reebok,* 32 F.3d at 1557, 31 USPQ2d at 1784. Nevertheless, more limited analysis may support a trial court's denial of a preliminary injunction. For example, a trial court need not make findings concerning the third and fourth factors if the

moving party fails to establish either of the first two factors. *Id.* at 1556, 31 USPQ2d at 1784 (citing *T.J. Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc.*, 821 F.2d 646, 3 USPQ2d 1316 (Fed.Cir.1987)). Similarly, a trial court need not make a finding on a movant's likelihood of success on the merits if it affords the movant the benefit of the presumption of irreparable harm and properly finds that presumption rebutted by the non-movant. *Id.* at 1557, 31 USPQ2d at 1784.

■ Here, the district court attempted to do just that by affording Polymer the benefit of this presumption and by resting its denial of the motion on an explicit finding that Westmark overcame the presumption. Accordingly, the district court did not err by focusing its analysis solely on irreparable harm in denying Polymer's motion. However, since the court's decision was solely premised on the rebuttal of the presumption, we must vacate the trial court's decision if its finding that Westmark rebutted the presumption was "based an error of law or clearly erroneous factual findings." *Novo Nordisk*, 77 F.3d at 1367, 37 USPQ2d at 1775. Since we do find clearly erroneous fact finding and an abuse of discretion, we will vacate the court's decision.

The presumption of irreparable harm acts "as a procedural device which places the ultimate burden of production on the question of irreparable harm onto the alleged infringer." *Reebok*, 32 F.3d at 1556, 31 USPQ2d at 1784 (citing *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1272, 225 USPQ 345, 349 (Fed.Cir.1985)); *cf. Illinois Tool Works*, 906 F.2d at 682, 15 USPQ2d at 1309 ("[A] presumption of irreparable harm to a patentee is, like all presumptions, rebuttable."). Because the district court afforded Polymer the benefit of the presumption, the burden properly was on Westmark to produce evidence sufficient to establish that Polymer would not be irreparably harmed by an erroneous denial of its motion for preliminary injunction. *See Rosemount Inc. v. United States Int'l Trade Comm'n*, 910 F.2d 819, 822 n. 2, 15 USPQ2d 1569, 1571–72 n. 2; *Roper*, 757 F.2d at 1272, 225 USPQ at 349.

Various types of evidence have been found sufficient for this purpose. For example, the presumption may be rebutted by evidence that (1) the non-movant has or will soon cease the allegedly infringing activities, *Reebok*, 32 F.3d at 1557–59, 31 USPQ2d at 1785–86; *Roper*, 757 F.2d at 1273, 225 USPQ at 349, thus making an injunction unnecessary; (2) movants have engaged in a pattern of granting licenses under the patent, *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557, 33 USPQ2d 2005, 2009 (Fed.Cir.1995), such that it may be reasonable to expect that invasion of the patent right can be recompensed with a royalty rather than with an injunction; or (3) movants unduly delayed in bringing suit, thereby negating the idea of irreparability. *T.J. Smith*, 821 F.2d at 648, 3 USPQ2d at 1318. *See generally*, 5 D. Chisum, Patents, § 20.04[1][e] (1996). Each of these circumstances would appear to negate irreparable harm. Absent Westmark's proffer of similar evidence, the district court should have found that Polymer had shown irreparable harm.

The district court relied on its finding that most of Polymer's losses could not be attributed to Westmark's allegedly infringing activities. Specifically, the district court found that Ed Nolan's sudden death and overall market competition contributed substantially to Polymer's losses. The court relied upon Westmark's evidence that "nearly a dozen other competitors around the nation produce and sell products similar to Crop–Life" and Joanna Nolan's admission, during Polymer's case in rebuttal, that Polymer's losses were not "entirely" due to Bridwell. Ms. Nolan's lack of business experience was also said to be a factor in Polymer's loss of market share.

Polymer argues that, regardless of the lack of causal link between particular infringing activities and some of its losses, the presumption of irreparable harm was not rebutted by evidence of other potential causes of Polymer's lost revenues. We agree with Polymer that the presumption was not rebutted by the evidence on which the district court relied. The court seemed unduly reliant on its belief that "the fact that [Westmark] may have taken some of [Polymer's] business does not entitle [Polymer] to a pre-

liminary injunction." However, the court assumed that the patent was valid and infringed when it granted Polymer the presumption of irreparable harm. Absent a finding clearly negating irreparable harm, such as that future infringement was no longer likely, that the patentee was willing to forgo its right to exclude by licensing the patent, or that the patentee had delayed in bringing suit, there was no basis for finding that the presumption of irreparable harm was overcome. Because of the very nature of a patent, which provides the right to exclude, *see Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1456, 7 USPQ2d 1191, 1200 (Fed.Cir.1988) (stating that "the principle value of the patent is its statutory right to exclude"), infringement of a valid patent inherently causes irreparable harm in the absence of the above or similar exceptions.

The fact that other infringers may be in the marketplace does not negate irreparable harm. A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed. Being inexperienced in business also does not negate irreparable harm. Even a poor businessperson is entitled to the exclusionary rights of a patent. Thus, contrary to the rationale adopted by the district court, evidence that Westmark was not the principal or the sole cause of Polymer's lost sales does not provide legal support for the finding that Westmark rebutted the presumption of irreparable harm.

The cases on which the district court relied, *Reebok* and *Illinois Tool Works,* are not to the contrary. The district court relied on our statement in *Reebok* that "[a]pplication of a concept that *every* patentee is *always* irreparably harmed by an alleged infringer's pretrial sales would ... disserve the patent system," 32 F.3d at 1558, 31 USPQ2d at 1786 (quoting *Illinois Tool Works,* 906 F.2d at 683, 15 USPQ2d at 1310 (emphasis in original)). However, in that case the presumption of irreparable harm was rebutted by evidence that neither the patentee nor the alleged infringer would be continuing to manufacture or sell the devices covered by the patent (except for a small amount of residual stock). *Id.* at 1558, 31 USPQ2d at 1785.

Thus, no danger of future harm existed. Here, the record contains no evidence to suggest that Westmark's infringing activities have ceased. In *Illinois Tool Works,* we held that potential lost sales alone could not demonstrate "manifest irreparable harm" in light of other evidence that the movant had granted a non-exclusive license to a non-party. 906 F.2d at 683, 15 USPQ2d at 1310. Here, there is no evidence of further licensing nor is there any indication that such licensing is likely.

The district court also found that because "damages may be finite in this case due to the seemingly limited market and, therefore, may be readily calculable," any harm suffered by Polymer could be "fully compensated by money damages." Polymer argues that the district court erred by mischaracterizing the market as "limited" and by ignoring the principal value of the patent right: the statutory right to exclude. Westmark argues that, in light of its claim that it will be able to compensate Polymer in damages, the district court's ultimate finding that Westmark rebutted the presumption of irreparable harm was not clearly erroneous.

We have stated that, in the context of a potential loss of market share, "there is no *presumption* that money damages will be inadequate" in connection with a motion for a preliminary injunction. *Nutrition 21,* 930 F.2d at 872, 18 USPQ2d at 1351 (emphasis in original). However, merely asserting that it would have sufficient funds to answer for Polymer's future losses similarly does not sustain Westmark's burden to rebut the presumption of irreparable harm. *See Roper,* 757 F.2d at 1269 n. 2, 225 USPQ at 346 n. 2 (rejecting the view that an alleged infringer's ability to compensate the movant in money damages must end a court's inquiry regarding irreparable harm); *see also PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1566–67, 37 USPQ2d 1618, 1625 (Fed.Cir. 1996) (affirming grant of preliminary injunction based, in part, on finding that non-movant had not rebutted presumption of irreparable harm in light of finding that movant's market position would be threatened in the absence of injunctive relief). Competitors change the marketplace. Years after

infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

Furthermore, we do not agree with the district court's implicit proposition that evidence tending to show that the market for Climate and Crop–Life is "limited" rebuts the presumption of irreparable harm. The right to exclude others from a specific market, no matter how large or small that market, is an essential element of the patent right. As we have stated, "because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech*, 849 F.2d at 1456–57, 7 USPQ2d at 1200. By entering into an exclusive license agreement, Polymer has manifested a strong interest in maintaining an exclusive position in the relevant market. *Cf. High Tech Med. Instrumentation*, 49 F.3d at 1557, 33 USPQ2d at 2009 (concluding that the presumption was rebutted by, *inter alia*, evidence that movant had offered a license to non-movant, demonstrating movant's willingness to "forgo its patent rights for compensation"). Inventors with small markets are as entitled to exclusivity under the patent statute as are those with large markets. Accordingly, we conclude that the district court's finding that Westmark could fully compensate Polymer's losses in money damages does not alone justify its finding that Westmark rebutted the presumption of irreparable harm.

Polymer also argues that the district court erred in its implication that, because Polymer had not brought suit against its other competitors, it was not irreparably harmed. We agree. The failure to bring suit against other potential infringers may be relevant to an analysis of irreparable harm, but only when it indicates unreasonable delay in bringing suit, willingness to accept royalty-type damages in lieu of market exclusivity, or indifference in enforcing one's patent. *See T.J. Smith*, 821 F.2d at 648, 3 USPQ2d at 1318; *cf. Studiengesellschaft Kohle mbH v. Dart Indus.*, 549 F.Supp. 716, 757, 216 USPQ 381, 411 (D.Del.1982), *aff'd*, 726 F.2d 724, 220 USPQ 841 (Fed.Cir.1984) (holding, in context of laches defense, that "[p]atentees are not required to pursue simultaneously every party suspected of infringing"). Here, Westmark has offered no such evidence. Moreover, Polovina testified that he had become aware of other potential infringers only after this suit was filed and that he intends to seek injunctions against their activities if and when he has reason to believe that they are infringing the '342 patent. Thus Polymer's alleged failure to sue other competitors does not support the district court's finding that Westmark rebutted the presumption of irreparable harm.

Westmark argues that Polymer's delay in bringing this suit supports the district court's finding that Westmark rebutted the presumption. In particular, Westmark relies upon *Nutrition 21*, 930 F.2d at 872, 18 USPQ2d at 1351 (holding that a seven-month delay in bringing suit was sufficient to negate irreparable harm), and suggests that the delay between Westmark's first manufacture of Climate and the time Polymer brought suit constituted a delay sufficient to rebut the presumption. Even though the district court did not rely upon evidence of delay, Westmark asks that we affirm the district court's denial of Polymer's motion on that basis.

We cannot agree. Westmark does not argue that Polymer knew or should have known about Bridwell's plans to create the H.A. Spec. Co. before Westmark Ag Group began producing Climate. Moreover, Westmark admitted during oral argument that no suit could properly have been brought absent evidence of Westmark's infringing activities. Such activity did not commence until roughly four months before Polymer brought this suit. In light of this short lapse of time, we cannot conclude that Polymer's delay in bringing suit rebuts the presumption of irreparable harm.

■ Westmark finally argues that it is difficult to justify reversing or vacating a denial of a preliminary injunction, citing our past observation that a preliminary injunction is "a drastic and extraordinary remedy." *Intel Corp. v. ULSI Sys. Tech., Inc.,* 995 F.2d 1566, 1568, 27 USPQ2d 1136, 1138 (Fed.Cir. 1993); *see also Eli Lilly & Co. v. American Cyanamid Co.,* 82 F.3d 1568, ·1578, 38 USPQ2d 1705, 1713 (Fed.Cir.1996) (referring to preliminary injunction as "extraordinary" relief). That may be true. However, statements that a preliminary injunction is a drastic and extraordinary remedy do not imply that it must be rare or practically unattainable, only that it is not granted as a matter of right; it must be thoroughly justified. *See Smith Int'l,* 718 F.2d at 1579, 219 USPQ at 691 (reversing the denial of a preliminary injunction and holding that "[w]here a case for a temporary injunction is clearly made out, it is not open to the trial court to deny the remedy").

Accordingly, we conclude that neither Westmark's arguments nor the district court's analysis supports the court's finding that Westmark rebutted the presumption of irreparable harm. In the absence of such support, the finding that the presumption of irreparable harm was overcome was clearly erroneous. In light of the court's having assumed validity and infringement and not having considered the other relevant factors, the court abused its discretion in denying the injunction.

■ Polymer urges us to render findings regarding the three factors expressly reserved by the district court and remand with instructions to enter a preliminary injunction. In particular, it urges us to find that it has made a clear showing of infringement and validity and that the balance of hardship and public interest factors are in its favor. We cannot do this. Polymer has "misconstrue[d] the *appellate* function of this court and the decisional criteria in considering motions for preliminary injunctions. Substantive issues, such as validity and infringement, are not raised for final resolution by such motions."

*Roper,* 757 F.2d at 1271, 225 USPQ at 348 (emphasis in original). It is the function of the trial court to evaluate and balance all four factors before a preliminary injunction is granted. *See Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1221, 37 USPQ2d 1529, 1532 (Fed.Cir.1996) ("A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art."); *Oakley, Inc. v. International Tropic–Cal, Inc.,* 923 F.2d 167, 169, 17 USPQ2d 1401, 1403 (Fed.Cir.1991) ("We cannot make the necessary factual findings relating to infringement at the appellate level."). Accordingly, we express no opinion regarding the factors reserved for later analysis by the district court. All we decide is that the district court clearly erred in finding that the presumption of irreparable harm was rebutted and abused its discretion in denying the injunction premised solely on that erroneous grounds. On remand, the district court should evaluate the other factors and exercise its discretion in light of its findings.

■ Finally, Polymer's statement impugning the district court's competence to decide this issue of patent law merits further comment. Polymer appears to argue that because the district court judge has had only limited experience with disputes concerning intellectual property law, we should infer or presume that he erred in ruling on this motion.[2] Notwithstanding our disposition of this case, we find this argument wholly inappropriate and, indeed, offensive. All courts are legally competent to decide the issues that properly come before them. An appellant does not aid its cause by impugning a trial court's competence.

## CONCLUSION

The district court abused its discretion in denying Polymer's motion for preliminary injunction. The evidence presented by Westmark and relied upon by the district court was legally insufficient to rebut the presump-

**2.** Polymer presents us with the results of a computer-aided search for the word "patent" in decisions authored by the district court judge as well as a critique of his decision for the district court in a trademark case from 1993.

tion of irreparable harm. We therefore vacate the district court's denial of Polymer's motion for a preliminary injunction. Because the district court declined to articulate findings regarding the other factors relevant to Polymer's motion, we remand for further proceedings not inconsistent with this opinion. Accordingly, the district court's order denying Polymer's motion for a preliminary injunction is

*VACATED AND REMANDED.*