MOEN, INCORPORATED, Plaintiff,

v.

FOREMOST INTERNATIONAL
TRADING INCORPORATED,
Defendant.

No. 97 C 8739.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 1998.

Edward M. Keating, Dorn, McEachran, Jambor & Keating, Chicago, IL, for Plaintiff.

Nate F. Scarpelli, Richard M. LaBarge, Lena Tsoulfanidis Van Asdale, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff Moen International moves for a preliminary injunction against Defendant Foremost International Trading Incorporated based on: (1) design patent infringement, and (2) unfair competition and trademark infringement. For the reasons set forth below, the court grants the preliminary injunction.

### I. *BACKGROUND FACTS*

Plaintiff Moen International is one of the world's largest producers of faucets and related plumbing products. At present, Moen's share of all faucets sold in the United States is approximately 25%, essentially the same as its major competitor Delta Faucet. In 1997, Moen's total U.S. sales of faucets and related plumbing parts was $625 million.

In 1993, Moen introduced its Monticello line of bath products, including the two handle 4″ centerset faucet at issue in this litigation. The faucet at issue is the number one selling retail lavatory faucet for Moen (it is carried nationwide by 21 retail home center chains). Moen alleges that $124 million of a

$217 million increase in sales for Moen between 1992 and 1997 was provided by the Monticello line (and of the $124 million, $29 million was produced solely by the two handle 4″ centerset faucet at issue here). Moen estimates that the product at issue here accounts for almost 5% of Moen's total 1997 sales of faucets and related plumbing products. Moen has spent more than $9 million in advertising and promoting the faucet at issue.

Defendant Foremost International Trading, Inc. sells faucets under the heading "Connoisseur Series." Moen asserts that Foremost's faucet infringes on Moen's. Foremost's brand share of faucets is apparently .1% or less of the U.S. market. Foremost states that Moen sells 430,000 faucets a year but that Foremost is currently selling less than 700 of the faucets in suit per year.

On December 17, 1997, Moen filed its complaint alleging: (1) design patent infringement, (2) unfair competition and trademark infringement under § 43(a) of the Lanham Act, and (3) violation of certain designated Illinois statutes related to deceptive business practices, deceptive trade practices and antidilution. Moen now moves for a preliminary injunction on: (1) design patent infringement, and (2) unfair competition and trademark infringement.

## II. *THE DESIGN PATENT INFRINGEMENT CLAIM.*

■ To determine whether a preliminary injunction should issue in a case of design patent infringement, a district court must consider: (1) whether the movant has sufficiently established a likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if an injunction were not granted; (3) whether the balance of hardships tips in the movant's favor; and (4) the impact, if any of an injunction on the public interest. *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 988 (Fed.Cir. 1993).

### A. *LIKELIHOOD OF SUCCESS ON THE MERITS—INFRINGEMENT.*

■ To prove likelihood of success on the merits in a patent controversy, the plaintiff must demonstrate patent validity and infringement. Foremost does not contest the validity of Moen's patent (called the '466 design patent). Instead, with respect to the likelihood of success on the merits, Foremost argues that there are serious questions as to whether the design is infringed.

The standard for design patent infringement was articulated by the United States Supreme Court in 1871 in *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed 731 (1871):

> "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, including him to purchase one supposing it to be the other, the first one patented is infringed by the other." *See also, Payless, supra,* 998 F.2d at 990–991.

### 1. **Moen's Infringement Argument.**

■ To infringe, an accused design must appropriate the "point of novelty" of the claimed design, *i.e.,* have the same features that set the patented design apart from prior designs. Moen contends that the point of novelty that Foremost infringes is the specific shape, contour, proportion, relationship and integration of the spout and escutcheon (the base supporting the handles and spout) in its '466 patent, *i.e.,* the product less its handles and drain pull.

Moen contends that, under the law (*see* cases cited in Pl.Mem. at 5–6), this court need merely compare the faucet spout and escutcheon in its '466 design patent with the spout and escutcheon of the Foremost faucet. Moen asserts that such a comparison shows, without a doubt, that Foremost's product design is substantially the same as the patented design.

### 2. **Foremost's Non–Infringement Argument.**

Foremost asserts that there are significant differences between the two designs at issue (especially looking at its faucet design from different angles than the drawings presented by Moen), including that: (1) the base of the

Foremost faucet is angular while the base in the Moen design is fluid; and (2) the spout of the Foremost faucet has flattened sides joined by a curved top, while the spout in the Moen drawings has perfectly rounded sides and top (in addition, the Foremost spout is wider than the spout in the Moen design). (*See* Def.Resp. at 5.)

Foremost further asserts that there is no difference between the Foremost design and the faucet designs of other competitors of Moen. Foremost provides pictures of a Delta faucet and a Price Pfister faucet. (*See* Def. Resp. at 8.) Foremost claims that the fact that Moen does not object to the Delta faucet is a tacit admission that Foremost's faucet does not copy any point of novelty of the Moen drawings.

Foremost further asserts that the significance of the differences in the spouts and bases is signified by the fact that the U.S. Patent and Trademark Office concluded that the design of the Foremost base and spout is a patentably distinct design, entitled to its own design patent. Foremost's patent is dated February 10, 1998. (*See* Def.Resp.Ex. 3.) Foremost asserts—without citation to authority—that the presumption of validity of Foremost's patent raises significant doubts about Moen's chances of proving that the Foremost design is the same one shown in the Moen drawings.[1]

### 3. Finding.

■ Based on the evidence and arguments presented, the court finds that movant has:

(1) requisitely established under the *Gorham* (and *Payless*) standard(s) that Foremost's faucet design is substantially the same as Moen's '466 design patent[2], and (2) sufficiently established a strong likelihood of success on the merits.

### B. *IRREPARABLE HARM.*

#### 1. Moen's Irreparable Harm Argument.

"[W]here validity and continuing infringement has been clearly established ... immediate irreparable harm is presumed." *Smith Int'l Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983). *See also Nutrition 21 v. United States,* 930 F.2d 867, 871 (Fed.Cir. 1991). Moen argues that it has demonstrated such a showing. In particular, Moen's position, essentially, is that if Foremost is allowed to continue and, inevitably, expand its previous course of conduct—*e.g.,* it has sold its accused product to Home Depot and Wal–Mart—there could well be a substantial erosion of Moen's $29 million per year market share.

#### 2. Foremost's Non–Irreparable Harm Argument.

Foremost argues that Moen has not demonstrated a clear showing of infringement to entitle it to a presumption of irreparable harm. Foremost argues that it is tiny and cannot harm Moen.

Foremost further argues that Moen cannot demonstrate irreparable harm because Moen

---

**1.** With respect to this argument, as stated, Foremost presents no authority that a subsequently issued design patent on an accused product precludes infringement of a previously issued design patent. Moen, on the other hand, notes that in the seminal design patent case *Gorham Mfg. Co. v. White,* 14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1871), the infringer had two design patents on the accused product, and the Supreme Court, nonetheless, held that the accused product infringed the earlier issued Gorham patent. In addition, with respect to *utility patents,* Moen notes that the Federal Circuit has stated that "[t]he grant of a separate patent on the accused device does not automatically avoid infringement, either literally or by equivalency." *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1191 (Fed.Cir.1996). *See also Day–Brite Lighting, Inc. v. Sandee Mfg. Co.,* 126 U.S.P.Q. 32, 35 (N.D.Ill.), *rev'd on other grounds,*

286 F.2d 596 (7th Cir.1960). In light of the above, this court cannot find that the issuance of a subsequent design patent on an aspect of an accused product precludes infringement of a previously issued design patent.

**2.** The court finds that the evidence presented by the movant on the issue was sufficient under law. *See, Braun, Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 820, 821 (Fed.Cir.1992). *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992), cited by the defendant, is distinguishable. That case merely held, on its particular facts, that a jury's verdict could not stand "where the plaintiff failed wholly to offer proof" respecting infringement of the subject patent (*e.g.* the similarity of the "ornamental features" of the Portec device and the patented design). *Id.* 970 F.2d at 825–26.

has allowed other competitors to sell similar products. Foremost states that "[s]ince Moen has not complained about harm caused by the sale of the Delta faucets, it cannot seriously be heard to complain that it would be irreparably harmed by the sale of a much smaller number of the Foremost faucets." (Def.Resp. at 11.)[3]

### 3. Finding.

The court determines that movant's position is well-founded. The court, accordingly, finds that movant has established that it would suffer irreparable harm if a preliminary injunction were not granted.

### C. *BALANCE OF HARDSHIPS.*

The court agrees with movant's position; namely, that the faucet business is highly competitive, and Moen has a right to the exclusivity provided by the patent laws and to the market for the patented product it has developed via considerable expense and effort. To enjoin Foremost only affects one of its many faucet products. On the other hand, to deny Moen's request for injunctive relief puts at risk a $29 million faucet market created by movant.

### D. *THE PUBLIC INTEREST.*

With respect to public interest, the court concurs with movant that there is a strong public policy favoring the enforcement of patent rights. *See PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1567 (Fed. Cir.1996).

### *CONCLUSION*

In view of the foregoing, Plaintiff/movant has met the requirements for the grant of a preliminary injunction. It is hereby ordered that a preliminary injunction as requested is entered in favor of the Plaintiff and against the Defendant.[4]

---

**3.** Defendant relies on *T.J. Smith & Nephew v. Consolidated Medical Equip.,* 821 F.2d 646, 648 (Fed.Cir.1987) and *Polymer Technologies, Inc. v. Bridwell,* 103 F.3d 970, 974 (Fed.Cir.1996) for the assertion that where a patentee has allowed other competitors to sell similar products, the court should deny a preliminary injunction. Neither case, however, stands for the proposition asserted by the defendant herein.

In *Smith,* the court denied a preliminary injunction in part for lack of irreparable harm because the patent owner had licensed the patent to others and had not moved quickly against the accused defender. *Smith,* 821 F.2d at 648. Here, there is no contention that Moen failed to move promptly against Foremost, and Moen has not licensed the patent in issue here.

In *Polymer,* the district court denied a preliminary injunction in part because the fact that Polymer had not brought suit against its other competitors implied there was no irreparable harm. *Polymer,* 103 F.3d at 975–76. The court of appeals, however, reversed this finding, deter-

mining that the evidence was insufficient to rebut a presumption of irreparable harm. The court of appeals specifically held that the district court erred in its implication that, because Polymer had not brought suit against its other competitors, it was not irreparably harmed. *Id.* 103 F.3d at 976. The *Polymer* court stated that the failure to bring suit against other potential infringers may be relevant to an analysis of irreparable harm, but only, unlike the situation here, when it indicates unreasonable delay in bringing suit, willingness to accept royalty-type damages in lieu of market exclusivity, or indifference in enforcing one's patent. *Id.* Pivotally here, the court added that *"[t]he fact that other infringers may be in the marketplace does not negate irreparable harm. A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed." Id.* 103 F.3d at 975 (emphasis added).

**4.** In view of the court's holding, it is not necessary to address the trademark/tradedress infringement issue raised by the movant.