**William P. YOUNG, Plaintiff,**

v.

**LUMENIS, INC., Defendant.**

No. 2:03–cv–655.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 26, 2004.

Jason H. Foster, Kremblas Foster Phillips & Pollick, Reynoldsburg, OH, for Plaintiff.

Christopher Craig Woods, Squire Sanders & Dempsey—2, Columbus, OH, Gregory J. Fleesler, Stephen N Weiss, Moses & Singer LLP, New York, NY, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This patent action is before the Court on Plaintiff's Motion for Preliminary Injunction. Plaintiff, William P. Young, seeks an order enjoining Defendant, Lumenis, Inc. ("Lumenis"), from performing his patented surgical procedure for a feline onychectomy and from aiding and abetting infringement by others. On December 10, 2003, this Court held a preliminary injunction hearing. Based on the arguments of counsel and the evidence presented at the hear-

ing, the Court hereby **GRANTS** Plaintiffs' Motion for Preliminary Injunction.

## II. BACKGROUND

Plaintiff, a veterinarian, has obtained a patent for a cat declaw method using a laser. U.S. Patent No. 6,502,579 (the "'579 patent"), entitled "Laser Onychectomy by Resection of the Redundant Epithelium of the Ungual Crest," was awarded to Plaintiff on January 7, 2003. According to Plaintiff, the patented procedure differs from the prior art because the previous practice was to perform a straight line amputation. His procedure involves at least two additional steps: (1) the veterinarian is required to cut the skin and pull it back, exposing the joint; and (2) the joint is then removed. The process leaves additional skin, the redundant epidermis, that may then be used to cover the wound, allowing the cat to walk on the paw very soon after surgery, decreasing the amount of pain, and improving the healing process.

Plaintiff filed his provisional patent application on January 19, 2000, and his nonprovisional patent application on January 17, 2001. At the preliminary injunction hearing, Plaintiff described his development of the procedure:

.... I purchased a Lumenis laser— well, at the time it wasn't Lumenis I purchased a laser December 1997. I took possession of that laser in March of 1998 and I started to perform laser surgery in accordance with the generally-accepted methods at the time

One of the things that I was very disappointed with was the outcome that I obtained when performing declaws with the laser. And so through the next six months or so, I developed a concept of declawing cats that I later really perfected in, say, spring of 1999.

Defendant is an international manufacturer, seller, and distributor of, among other things, surgical laser instruments. The surgical laser instruments manufactured and sold by Defendant may be used to perform Plaintiff's patented surgical procedure. Dr. Reinaldo A. Arza, an employee of Lumenis since February 2002, testified at deposition that he has performed all of the steps described in the '579 patent, and that he did so beginning in December 1998 or January 1999.[1]

After filing his provisional patent application, Young delivered a lecture on the procedure and prepared and published a technical paper describing the procedure. An overview of this paper was published in the May 2002 volume of *The Veterinary Clinics of North America Small Animal Practice,* edited by Dr. Kenneth E. Bartels. The volume focused on "Lasers in Medicine and Surgery."

Not long after his lecture, Plaintiff noticed that Lumenis and people affiliated with Lumenis were encouraging veterinarians to perform the procedure. Conferences purportedly sponsored by Lumenis and/or its predecessor company, ESC Medical Systems, and offered under Lumenis's AccuVet trademark, began to include sessions on laser onychectomy that taught a method similar to Young's procedure. On January 16, 2003, after the '579 patent issued, Plaintiff sent a letter to Defendant notifying it of the '579 patent, providing it with a copy of the '579 patent, offering to negotiate a license, and warning Defendant not to infringe the patent. Defendant did not respond to the letter.

Subsequently, one of Plaintiff's colleagues, Dr. John Carr, scheduled a sales demonstration with one of Defendant's independent sales representatives, Darren

---

1. Arza's deposition testimony was admitted into evidence in its entirety at the preliminary injunction hearing.

Wertheim. The sales demonstration occurred on June 30, 2003, was attended by both Carr and Young, and was openly recorded on videotape.[2] During the sales demonstration, Wertheim performed a feline declaw procedure that was similar, if not identical, to the patented procedure. Wertheim then encouraged Carr to perform the procedure.

After obtaining the '579 patent, Plaintiff visited a website, www.laserles.com, where he obtained detailed instructional materials relating to the patented procedure. The website is operated by Les Latin, another one of Defendant's independent sales representatives. Defendant's Accu-Vet trademark is prominently featured on the website. Young also testified that a colleague of his who attended a conference purportedly sponsored by Lumenis in Columbus, Ohio, in May 2003 received a copy of the May 2002 volume of *The Veterinary Clinics of North America Small Animal Practice*. The second page of the book stated, "Compliments of AccuVet Laser Surgery." Similarly, Arza testified that he distributes copies of the volume and that Lumenis provides him with these books.

On July 23, 2003, Young filed a Complaint in this Court against Lumenis alleging patent infringement, including inducement of patent infringement. This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction.

### III. STANDARD OF REVIEW

■ Injunctive relief in patent cases is authorized by 35 U.S.C. § 283. In ruling on a motion for preliminary injunction, a court must consider four factors: (1) the moving party's reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if a preliminary injunction is not granted;

(3) whether the balance of hardships tips in favor of the moving party; and (4) whether the public interest favors the grant of a preliminary injunction. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed.Cir.2003) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001)). In order to obtain a preliminary injunction in a patent case, the movant must establish at the very least both of the first two factors, i.e., a likelihood of success on the merits and irreparable harm. *Id.* (citing *Amazon.com*, 239 F.3d at 1350).

### IV. ANALYSIS

#### A. Likelihood of Success on the Merits

■ In order to establish a reasonable likelihood of success on the merits, Plaintiff must demonstrate, in light of the presumptions and burdens that will inhere at trial, both that he will likely prove infringement and that his infringement claim will likely withstand any challenges to the validity and enforceability of the patent. *Anton/Bauer*, 329 F.3d at 1348 (noting that the plaintiff must establish that any challenges "lack substantial merit") (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed.Cir. 2001)); *Amazon.com*, 239 F.3d at 1350–51.

#### 1. Validity

Defendant contends that the patent is invalid based on Arza's testimony that he performed the patented procedure hundreds of times beginning in December 1998 or January 1999. According to Defendant, this testimony raises a strong likelihood that the patent will be held invalid because the surgery was publicly performed before the date of invention by someone other than the inventor. Plaintiff

---

**2.** Both a transcript and a copy of the videotape were introduced into evidence at the preliminary injunction hearing.

argues that Defendant cannot establish invalidity under either 35 U.S.C. § 102(a) or § 102(b) for several reasons. First, Plaintiff asserts that the patent application date should be the date the provisional application was filed, January 19, 2000, and that the invention date was before that time, i.e., the invention was perfected in the spring of 1999. Plaintiff also argues that Arza's testimony does not establish that his performance of the procedure met the statutory prerequisite of being accessible to the public. Finally, Plaintiff contends that the uncorroborated testimony of an interested witness, testifying as to events that occurred several years ago, is not sufficient to establish a substantial question as to invalidity.

▮▮ A patent is presumed to be valid, 35 U.S.C. § 282, and this presumption can only be overcome at trial by clear and convincing evidence to the contrary. *E.g., WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1355 (Fed.Cir.1999). A party seeking to avoid a preliminary injunction must raise a substantial question regarding validity. *Amazon.com,* 239 F.3d at 1350–51. According to 35 U.S.C. § 102,

> A person shall be entitled to a patent unless—
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year

prior to the date of the application for patent in the United States....

35 U.S.C. §§ 102(a) and (b).

▮▮ Arza's uncorroborated testimony is not sufficient to raise a substantial question of invalidity. There is a general rule in patent cases requiring corroboration of oral testimony asserting invalidity of a patent. *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1366 (Fed.Cir. 1999) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony."); *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed. Cir.1998) ("[T]here is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of interested persons and their friends, particularly as to long-past events."); *see Price v. Symsek,* 988 F.2d 1187, 1194 (Fed. Cir.1993) (stating the rule that testimony by an alleged inventor asserting priority over a patentee must be corroborated). The Court recognizes that this general rule is not strictly applicable in the preliminary injunction context. *Cf. Helifix Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1351 (Fed.Cir.2000) (holding defendant had not presented clear and convincing evidence sufficient to warrant summary judgment but finding no abuse of discretion in denial of preliminary injunction to plaintiff, since standard for establishing validity defense is lower in preliminary injunction context).

Arza's testimony, however, was the *only* evidence as to invalidity that Defendant could muster for the preliminary injunction hearing.[3] No other witnesses testified

---

**3.** Defendant, at the hearing on this matter, attempted to bolster its invalidity claim with one other piece of evidence. Defendant cross-examined Young on an article purporting to describe an onychectomy that resembled the patented procedure. This article was not entered into evidence, and there was some dispute both as to whether the article in fact described Young's feline onychectomy procedure and as to whether the article dated from before or after the invention. One other potentially corroborating piece of evidence was an undated document, entitled "Declaw Laser Surgical Procedure," created by Arza

on this issue, and Defendant presented no tangible evidence of any kind. *See Woodland Trust*, 148 F.3d at 1373 (noting that the skepticism with which mere testimony of invalidating activity is received is "reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity. It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist."). Given that the issue of prior use is likely to be the most critical issue at trial, the fact that Defendant offered no other evidence at all that the patented procedure was performed by people other than Plaintiff before the critical dates does not bode well for Defendant's ultimate chance of success.

The Court recognizes that the defendant at a preliminary injunction hearing cannot be expected to present all evidence that it will ultimately produce at a trial on the merits. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (noting that a motion for preliminary injunction must customarily be decided "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *New Eng. Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed.Cir. 1992) ("Given the time constraints within which an accused infringer must usually respond with evidence to a motion for preliminary injunction, in this case within a

few weeks, a fully comprehensive presentation of its defenses cannot reasonably be required."). Surely, however, Defendant here would have focused its efforts on obtaining corroborative evidence on the consequential issue of validity.[4] The fact that Defendant was unable to obtain any other evidence of prior use suggests that its invalidity defense lacks substantial merit. The Court may consider Plaintiff's likelihood of success on the merits in light of the burdens that will inhere at trial. *Anton/Bauer*, 329 F.3d at 1348; *Amazon.com*, 239 F.3d at 1350. Because Defendant will be required to establish invalidity by clear and convincing evidence at trial, and because Defendant has presented *no other* evidence on this critical point, the Court concludes that Plaintiff has established a reasonable likelihood of success on Defendant's invalidity defense.

### 2. Infringement

■ Plaintiff contends that the testimony of Dr. Reinaldo A. Arza is sufficient to establish that Plaintiff has a reasonable likelihood of success on the merits as to Defendant's infringement of the '579 patent. Defendant does not dispute that Arza is an employee of Lumenis and does not dispute that Arza performed the patented procedure. Defendant's primary responsive argument is a repetition of its validity argument: Lumenis acknowledges that Arza performed the procedure but states that, because of when Arza allegedly began performing the procedure, his testimony establishes invalidity rather than infringement.[5] Lumenis also argues

---

that describes the patented procedure. Plaintiff, however, established through an expert witness in the area of computer science and examination of computer files that the document was created in December 2000 and last modified in May 2003. December 2000 is most likely after the date of invention and not prior to one year before the filing of the nonprovisional patent application.

4. The Court also notes that the time constraints ordinarily present in preparing for a

preliminary injunction hearing were less manifest here, where the hearing was held three months after the Motion was filed.

5. The parties dispute whether the actions of Darren Wertheim, Les Latin, and other independent sales representatives can establish infringement or inducement to infringe by Lumenis. For purposes of this Motion, the Court need not decide this issue since the Court determines that Arza, an actual employee and agent of Lumenis, engaged in infring-

that it cannot be liable for patent infringement based on its distribution of the book in which Plaintiff's article appeared because the book contains articles other than Plaintiff's, is readily available from the publisher, and does not demonstrate that Defendant either knowingly induced infringement or possessed specific intent to encourage another's infringement. *See Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed.Cir.2002) (stating requirements for claim of inducement to infringe a patent), *cert. dismissed,* —— U.S. ——, 123 S.Ct. 1779, 155 L.Ed.2d 533 (2003).

Plaintiff is correct that Arza's testimony is sufficient to allow Young to establish a reasonable likelihood of success on the merits of the infringement issue. Arza is clearly an employee of Lumenis. In fact, Carl Bennett, Defendant's marketing director, testified that Arza is a Lumenis employee. Lumenis is thus liable for Arza's acts. Arza testified that he teaches veterinarians "how to do the declaw procedure with the laser" as part of sales demonstrations to potential customers. Arza read each claim of the '579 patent and stated that he had performed each step described in the patent. He admitted to performing and teaching those steps currently:

Q. You've indicated that you have been practicing this procedure since at least late '98 or early '99—

A. Correct.

Q. —as it's been claimed in the patent—in the claim chart we just talked about. And you say you currently do that. You currently practice the procedure or at least instruct other people how to practice that procedure as is claimed in the claim chart that we just talked about?

ing activities and encouraged others to in-

A. Currently I do.

Arza stated that he hands out copies of a document entitled, "Declaw Laser Surgical Procedure" "to people that I teach how to do the declaw procedure with the laser." This document describes how to perform the patented procedure. Arza distributes this document because, "for me as a rep that is selling a product that is going to be used for doing that procedure so that I could give it to somebody so that they can have some notes whereby they can go back and say, 'Okay, here are the steps.'" Arza also testified that he hands out copies of the May 2002 volume of *The Veterinary Clinics of North America Small Animal Practice* and that Lumenis provides him with copies of this book.

Defendant has not disputed that Arza is an employee and has not disputed any of the above testimony. Because the Court has already determined that Arza's testimony does not suffice to raise a substantial defense as to validity of the '579 patent, Plaintiff has demonstrated a reasonable likelihood of success as to infringement and inducement to infringe based on Arza's statements. Because Plaintiff has establish a likelihood of success both as to validity and infringement, Plaintiff has succeeded on the first preliminary injunction factor.

### B. Irreparable Harm

Plaintiff argues, first, that irreparable injury should be presumed. Aside from the presumption, Plaintiff contends that he will suffer irreparable harm to his reputation if he is forced to litigate against infringing veterinarians. Plaintiff also asserts that the virtual impossibility of determining who is performing the patented procedure will make damages extremely difficult to ascertain, thereby warranting injunctive relief. Defendant contends that

fringe.

injunctive relief is foreclosed by Plaintiff's apparent willingness to grant licenses under the patent. Defendant also argues that Plaintiff's delay in bringing this Motion proves that there is no irreparable harm. Finally, Defendant asserts that Plaintiff cannot show any damage to his reputation and that litigation expenses cannot constitute irreparable harm.

■ A threat of irreparable harm is presumed in a patent case where there is a strong showing of likelihood of success on validity and infringement. *Amazon.com*, 239 F.3d at 1350; *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 954 (Fed.Cir.1990). This presumption may be rebutted, however. *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed.Cir.1996). Specifically, irreparable harm may be disproved by evidence that "movants have engaged in a pattern of granting licenses under the patent, such that it may be reasonable to expect that invasion of the patent right can be recompensed with a royalty rather than with an injunction; or [ ] movants unduly delayed in bringing suit, thereby negating the idea of irreparability." *Id.* (internal citation omitted). In general, licensing rebuts the presumption of irreparable harm and defeats a request for a preliminary injunction because it is incompatible with the emphasis on a patentee's right to exclude and indicates that the patentee is willing to forgo this right for compensation. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed.Cir.1995) (stating that plaintiff's offer to license indicates its willingness "to forgo its patent rights for compensation"); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed.Cir.1987) (noting that licensing is "incompatible with the emphasis on the right to exclude that is the basis for the presumption in a proper case"). Absent such a finding "clearly negating irreparable harm," the irreparable harm factor should weigh in favor of the movant. *Polymer*, 103 F.3d at 975.

■ Defendant is correct that, absent a good explanation, a substantial period of delay "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech*, 49 F.3d at 1557 (finding 17 months to be a substantial period of delay). Here, the patent issued on January 7, 2003, Plaintiff brought suit on July 23, 2003, and Plaintiff filed his Motion for Preliminary Injunction on September 10, 2003. Given the mandate of Federal Rule of Civil Procedure 11, this delay was not so substantial as to foreclose Plaintiff from obtaining preliminary injunctive relief. Upon obtaining the patent, Plaintiff first attempted to negotiate with Lumenis. After allowing for a reasonable response period, Plaintiff began to gather evidence to determine whether Lumenis was infringing or inducing infringement of the patent. Less than one month after the videotaped sales demonstration, Plaintiff filed suit. After filing the Complaint, Plaintiff had to wait more than 30 days to receive Defendant's refusal to waive service. Plaintiff then served Defendant with the Complaint and the Motion for a Preliminary Injunction at the same time, 51 days after the Complaint was filed. Any delay in filing this Motion was thus justifiable.

■ Young has engaged in two forms of licensing activities. First, he has provided and continues to offer to provide non-exclusive licenses to individual veterinarians, for a fee of $2,500 per individual veterinarian or $5,000 per clinic. Young advertises these licenses on his website. Second, soon after receiving the '579 patent, he offered to negotiate an exclusive license with Lumenis. In *Schawbel Corp. v. Conair Corp.*, 122 F.Supp.2d 71 (D.Mass.2000), *aff'd mem.*, 15 Fed. Appx.

800, 2001 WL 910926 (Fed.Cir. Aug.10, 2001), the court noted that the Federal Circuit has distinguished exclusive agreements from non-exclusive agreements. *Id.* at 84 (citing *Polymer*, 103 F.3d at 976). The court went on to state that exclusive agreements "weigh in favor of irreparable harm because they signal the patentee's intent to preserve the right to exclude others from the market." *Id.* (citing *Polymer*, 103 F.3d at 976) (holding that plaintiff's practice of exclusively licensing its technology to one licensee failed to rebut the presumption of irreparable harm).

Both *High Tech* and *T.J. Smith*, cited by Defendant for the proposition that licensing activity indicates an absence of irreparable harm, involved different circumstances than are found here. In *High Tech*, not only had the plaintiff offered a license to the defendant, indicating that it was willing to forgo its patent rights for compensation, but the plaintiff also had not shown that it was likely to succeed on the merits, did not point to *any* specific injury it would suffer from denial of the preliminary injunction, and had delayed without good reason for almost 17 months before bringing suit. *High Tech*, 49 F.3d at 1556–57. In *T.J. Smith*, the court found relevant the fact that the plaintiff had "long licensed its patent to two licensees." *T.J. Smith*, 821 F.2d at 648. The court also noted, however, that the plaintiff did not show a likelihood of success on the infringement issue and had waited 15 months before seeking a preliminary injunction. *Id.* Like in *High Tech*, the court in *T.J. Smith* weighed all these factors before determining that the plaintiff had not established irreparable harm. *Compare T.J. Smith*, 821 F.2d at 648, *with High Tech*, 49 F.3d at 1556–57. Here, only one factor, the willingness to license, militates against irreparable injury.

Neither Young's licensing of individual veterinarians to perform the patented procedure nor Young's attempt to negotiate an exclusive license with Lumenis to teach the patented procedure is inconsistent with the preliminary relief sought here. Young acknowledges that he wants to license veterinarians to perform the patented procedure; in fact, such licensing represents the typical way for a veterinarian who has invented a new procedure to profit from the procedure. Young also indisputably attempted to negotiate an exclusive license arrangement with Lumenis, suggesting that, at least in January 2003, he would have been willing to accept a royalty in exchange for the right to exclude under his patent.

Money damages are no longer sufficient to compensate Young, however. Young has a reasonable likelihood of proving at trial that Lumenis has infringed the patent and has taught and encouraged others to infringe the patent. Theoretically, Young could then recover from Lumenis a reasonable royalty for every veterinarian who had performed the patented procedure based on Lumenis's inducement. Realistically, however, it will be virtually impossible to determine how many veterinarians have performed or are performing the procedure after having learned the procedure from Lumenis. Lumenis itself is unlikely to be able to determine how many conference participants or observers at sales demonstrations have gone on to infringe the patent. Difficulty in ascertaining damages is, in itself, sufficient to establish irreparable injury. *See, e.g., Monsanto Co. v. McFarling*, 302 F.3d 1291, 1296–97 (Fed.Cir.2002) (defining irreparable harm as "harm not readily remediable monetarily"), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1357, 155 L.Ed.2d 196 (2003); *Systemation, Inc. v. Engel Indus., Inc.*, 194 F.3d 1331 (table), 1999 WL 129640, at *3 (Fed. Cir. Mar.10, 1999) (affirming district court decision that found irreparable injury based both on the presumption and on a

showing that damages would be difficult to ascertain). At the very least, the difficulty in ascertaining damages, when combined with Defendant's failure to clearly rebut the presumption of irreparable injury, causes the irreparable injury factor to militate in favor of granting the preliminary injunction.

### C. Balance of Hardships

Defendant has not presented any evidence, or even argued, that it will suffer any hardship if the preliminary injunction is granted. Under any injunction issued by this Court, Defendant will continue to be able to sell its lasers; it merely will be unable to infringe the '579 patent. As noted above, Plaintiff is likely to face irreparable harm if his Motion is denied. The balance of hardships therefore favors the issuance of a preliminary injunction.

### D. Public Interest

Again, Defendant has not presented any evidence or made any argument that the public interest would be adversely affected by the grant of a preliminary injunction. Plaintiff correctly asserts that a preliminary injunction in this circumstance would serve the public interest in maintaining the integrity of patents and decreasing patent infringement. Consideration of the public interest thus supports the Court's decision to grant a preliminary injunction.

### V. CONCLUSION

All four factors favor the issuance of a preliminary injunction. Based on this analysis, the Court hereby **GRANTS** Plaintiff's Motion for Preliminary Injunction. The Court hereby **ORDERS** that Defendant and anyone acting in concert with Defendant be preliminarily enjoined from:

(1) teaching, demonstrating, performing, or practicing the feline onychectomy procedure in the '579 patent; and

(2) distributing any materials that describe, explain, teach, or illustrate a feline onychectomy procedure similar or identical to that found in the '579 patent.

The Court further **ORDERS** Defendant to specifically advise all its sales representatives of the existence of the '579 patent and that the patent has been deemed valid pending a final adjudication of this matter. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Plaintiff is hereby **ORDERED** to pay a bond in the amount of $2,500.

**IT IS SO ORDERED.**