**BOEHRINGER INGELHEIM
VETMEDICA, INC., et
al., Plaintiffs,**

v.

**SCHERING–PLOUGH CORPORATION
and Schering Corporation,
Defendants.**

Civ. No. 96–4047(HAA).

United States District Court,
D. New Jersey.

Aug. 2, 2000.

---

Jonathan A. Marshall, Jennifer Gordon, Scott D. Stimpson, Pennie & Edmonds, New York City, for Plaintiffs.

Sidney David, Paul H. Kochanski, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, for Defendants.

## OPINION

ACKERMAN, Senior District Judge.

This matter comes before the Court on a motion filed by Boehringer for a permanent injunction and by motions filed by Schering Corp. and Schering–Plough Corp. (hereinafter "Schering") for a judgment as a matter of law, a new trial and a stay of any injunction during the pendency of these post-trial motions. For the reasons set forth below, Boehringer's motion for a permanent injunction is hereby granted, Schering's request for a stay of that injunction is denied and as discussed below, this Court seeks further guidance from Schering regarding its post-trial motions. Therefore, in accord with this Opinion and Order to be issued on this same date, this Court grants Boehringer's request for a permanent injunction, denies Schering's request for a stay pending the resolution of its post-trial motions and enters judgment in favor of Boehringer.

### A. *Procedural Issues*

This is one of many written opinions issued by this Court in this case and the related case 1998–CV–5703. *See Boehringer Ingelheim v. Schering,* 984 F.Supp. 239 (D.N.J.1997) (hereinafter *"Boehringer I"*); *Boehringer Ingelheim v. Schering,* 6 F.Supp.2d 324 (D.N.J.1998) (hereinafter *"Boehringer II"*); *Boehringer Ingelheim v. Schering–Plough,* 68 F.Supp.2d 508, 536 (D.N.J.1999) (hereinafter *"Boehringer III"*); *Boehringer Ingelheim v. Schering–Plough,* 106 F.Supp.2d 667 (D.N.J.2000) (hereinafter *"Boehringer IV"*). Prior to trial on the issues effecting Patent '778, this Court severed the issue of inequitable conduct from the issues of obviousness and infringement. The former, to be tried by this Court sitting without a jury and the latter two issues, to be tried by a jury. The jury trial was conducted from November 30, 1999 until January 20, 2000 at which time the jury returned a verdict in favor of Boehringer on the issues of obviousness and infringement. Thereafter, this Court heard additional testimony on the exclusive issue of whether Boehringer engaged in inequitable conduct before the Patent Office. This Court issued a written opinion finding that Schering failed to prove such inequitable conduct by clear and convincing evidence. *See Boehringer IV,* 106 F.Supp.2d 667. Accordingly, this Court entered judgment on June 20, 2000 in favor of Boehringer.

On June 20th, this Court:

ORDERED that Claim One of United States Letters Patent No. 5,476,778 is not invalid due to inequitable conduct practiced by Plaintiff before the United

States Patent and Trademark Office; and it is further

ORDERED that Judgment is entered in favor of Plaintiff and against Defendants; and it is further

ORDERED that this Order does not close this matter; and it is further

ORDERED that a status conference will be held in this case before this Court on July 5, 2000 at 2 p.m.; and it is further

ORDERED that the Clerk of this Court shall notify the Commissioner of Patents within thirty (30) days in accordance with 35 U.S.C. § 290.

In the written opinion issued along with that Order, this Court stated:

> After carefully consideration [sic], for the reasons stated below, this Court finds that Schering has failed to prove that Boehringer engaged in inequitable conduct that would invalidate the '778 Patent. Accordingly, since all substantive issues have now been resolved in this matter, together with an Order issued on this same date, final judgment shall be entered in this matter in favor of Boehringer. [Fn 1]

---

Fn 1. This Court also rejects Schering's oral motion for judgment notwithstanding the verdict. The Court is aware that Schering intends to move for a new trial pursuant to Fed.R.Civ.P. 50(b). This Court will consider that motion at the appropriate time.

*Boehringer IV*, 106 F.Supp.2d at 668.

Within 10 days of that Order being entered, Schering moved for a new trial pursuant to Rule 59 and for a judgment as a matter of law pursuant to Rule 50. Meanwhile, Boehringer also moved for a permanent injunction. Schering opposes

Boehringer's request for a permanent injunction and in turn, seeks a stay of any injunction during the pendency of Schering's post-trial motions. Boehringer has not yet responded to Schering's post-trial motions arguing that such motions are premature because they have been filed before "judgment" has been entered.

Boehringer contends that because no "judgment" as that term is used in 28 U.S.C. § 1292(c)(2) has been filed, "Schering has jumped the gun by filing three 'post-trial' motions, and has requested that the Court decide those motions *before* entry of judgment." *Id.* at ——, 2000 WL 993622, pp. 1–2. Boehringer builds on this foundation and argues that the "time for filing of Schering's Rule 50 and 59 motions, by the language of the Rules themselves, is triggered by entry of judgment," *id.* at ——, 2000 WL 993622, p. 2, which has not yet occurred in this case. Schering, in turn, argues that the Court's June 20th Order triggered the filing requirements of Rules 50 and 59, but that in any event, it makes sense for this Court to consider its post-trial motions contemporaneously with Boehringer's motion for injunctive relief such that a stay should be granted to allow for consideration of Schering's post-trial motions.

■ The parties argue about whether the June 20th Order was a "judgment" under Rules 50 and 59 of the Federal Rules of Civil Procedure and in turn, whether Schering's post-trial motions are timely. However, whether or not the June 20th Order was a "judgment" or not, this Court can consider Schering's post-trial motions because such motions can be filed before or after "judgment" is entered.[1]

---

1. Boehringer argues that the June 20th Order is not a "judgment" from which an appeal lies under 28 U.S.C. § 1292(c) and thus, it is not a "judgment" under Rules 50 and 59. As discussed in the text, the answer to this question is of no consequence to the disposition of the motions presently before the Court because Schering's attorneys prudently protected Schering's rights by filing these post-trial

motions within ten days of the June 20th Order. This Court notes, however, that under section 1292(c)(2), it appears that the June 20th Order was not immediately appealable under that section.

In non-patent cases when liability and damages are bifurcated and a "judgment" is entered only as to liability, that "judgment" as to liability is an interlocutory order which is

Because Schering's motion may be considered by this Court regardless of whether or not the June 20th Order triggered the filing requirements of Rules 50 and 59, it is not necessary to decide if the June 20th Order triggered the 10–day filing requirement of these Rules. Specifically, if the June 20th Order did trigger the 10–day filing requirement, Schering's motion may be considered by this Court because they were timely filed. If, however, the June 20th Order is not a "judgment" under Rule 50 and 59, Schering's motion may nonetheless be considered by this Court because the filing requirements embodied in those Rules are maximum filing requirements and do not prevent a party from filing such motions prior to the entry of "judgment."

Although parties typically do not file post-trial motions until entry of final judgment resolving all issues—liability and damages—the Rules do not require a party to wait to file a Rule 50 or Rule 59 until after the entry of such a "judgment." Rule 50 states that a movant "may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment." Fed. R. Civ. Pro. 50(b). Rule 59 states that "any motion for a new trial shall be filed no later than 10 days after entry of the judgment."

Fed. R. Civ. Pro. 59(b). These rules do not, by their terms, preclude the filing of post-trial motions before "judgment" has been filed; they merely require that once "judgment" has been filed, a party has only 10 days to file the motions. The caselaw supports this interpretation of Rules 50 and 59. *See Jurgens v. McKasy,* 905 F.2d 382, 386 (Fed.Cir.1990) (holding that "ten day limit in Rule 59 sets only a maximum period and does not nullify an otherwise valid motion made before a formal judgment has been entered."); *O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340 (3d Cir.1981) (holding that district court improperly denied Rule 50(b) motion filed after entry of final judgment because previous judgment which did not resolve issue of attorney's fees did not trigger Rule 50(b) filing requirements), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134, *reh'g denied,* 456 U.S. 965, 102 S.Ct. 2047, 72 L.Ed.2d 491A (1982); *Warner v. Rossignol,* 513 F.2d 678 (1st Cir.1975) (court could consider motion for new trial even though judgment had not been entered); *Garrett v. Blanton,* 1993 WL 17697 (E.D.La.1993) (Court could *sua sponte* grant new trial under Rule 59(d) before a Rule 59 "judgment" was entered); *DeLong v. International Union,* 850 F.Supp. 614,

not immediately appealable and does not trigger the 10–day filing requirement of Rules 50 and 59. *See Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) (liability determination without damages determination was not final, appealable order in discrimination case); *O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340 (3d Cir.1981) ("judgment" as used in Rule 50(b) is final judgment and opinion as to liability which did not resolve issue of attorney fees was not a "judgment" triggering 10–day rule); *Warner v. Rossignol,* 513 F.2d 678 (1st Cir.1975) (judgment on issue of liability in non-patent case did not trigger 10–day rule of Rule 59); *Manos v. TWA,* 324 F.Supp. 470 (N.D.Ill. 1971)(same). In patent cases, section 1292(c)(2) allows for an interlocutory appeal from "a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting." 28 U.S.C. § 1292(c)(2). To be immediately appealable, the liability judg-

ment must be both otherwise appealable and "final except for an accounting." 28 U.S.C. § 1292(c)(2). Thus, where a court has not yet reached the patentee's request for injunctive relief, the "judgment" on liability is not immediately appealable under section 1292(c)(2) because that judgment is not "final except for an accounting." *Stamicarbon, N.V. v. Escambia Chemical Corp.,* 430 F.2d 920, (5th Cir. 1970) (in finding jurisdiction for appeal, court concluded that motion for injunction was denied *sub silentio,* therefore court implied that undecided motion for injunction would bar appellate jurisdiction in patent case). The Federal Circuit has not issued a published opinion on this issue, but in several unpublished, non-precedential opinions, the Federal Circuit has adopted the reasoning of *Stamicarbon.* Thus, since this Court did not rule on Boehringer's request for injunctive relief in the June 20th Order, it appears that the liability judgment entered on June 20th was not immediately appealable under section 1292(c)(2).

618, n. 19 (S.D.Ohio 1993) (motion for new trial may be filed even though a court has not entered final judgment such that court may rule on such a motion even though final judgment has not yet been entered); *Manos v. TWA*, 324 F.Supp. 470 (N.D.Ill. 1971) (where motion to amend judgment and for new trial was filed before "judgment" was entered, court could consider motions because 10–day rule is maximum filing requirement). *But see Hiebert Contracting Co. v. Trager*, 274 F.Supp. 801 (D.Mass.1967) (dismissing without prejudice a Rule 59 motion filed before judgment was entered or any findings on the issue of damages were filed). Thus, even if the June 20th Order were not a "judgment" within the meaning of Rules 50 and 59 as Boehringer argues, Schering has not "jumped the gun" and this Court need not dismiss Schering's motion as premature.

## B. *Boehringer's Motion for a Permanent Injunction*

Thus, having concluded that a party may file a Rule 50 and/or Rule 59 motion before "judgment" is entered such that this Court may consider Schering's post-trial motions regardless of whether the June 20th Order triggered the filing requirements contained in those rules, it is this Court's task to decide whether the equities of this case warrant the imposition of a permanent injunction against Schering even during the pendency of Schering's post-trial motions.

The starting point for this analysis is Section 283 of Title 35 of the United States Code.

That section provides:

The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

35 U.S.C. § 283. As this section makes abundantly clear, the right to an injunction is not automatic but is left to the discretion of the district court after considering the equities of the particular case. *Roche*

*Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 866 (Fed.Cir.1984), *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984).

In the patent area, "it is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed.Cir.1989), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1524 (Fed.Cir.1985); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281–83 (Fed.Cir.1988). "Although the district court's grant or denial of an injunction is discretionary depending on the facts of the case, injunctive relief against an adjudged infringer is usually granted." *W.L. Gore*, 842 F.2d at 1281 (internal citations omitted); *Richardson*, 868 F.2d at 1247 (it is contrary to property law to deny the patentee's right to exclude others from use of his property); *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1564 (Fed.Cir.1984) (exercise of discretion cannot be arbitrary). While the right to exclude others is an integral concept in property law, the district court nonetheless has broad discretionary powers under the patent statute to determine whether the facts of the case warrant the entry of an injunction and to determine the scope of such an injunction. *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed.Cir.1993). An injunction is proper only to the extent that it is granted to prevent violation of any right secured by patent and may not be punitive. *Id.*

A district court in this situation must consider the equities of the situation. These equities include consideration of:

1) whether the patentee would be irreparably harmed without an injunction;

2) whether the patentee has an adequate remedy at law;

3) whether granting the injunction is in the public interest; and

4) whether the balance of hardships favors an injunction.

*See B & H Mfg. Inc. v. Owens–Illinois Glass Container Inc.*, 22 U.S.P.Q.2d 1551, 1552 (N.D.Ga.1991); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205, 1227–28 (D.Del.1989). A court need not give each factor equal weight, rather, the court must consider the equities of the particular case. In weighing these factors, a "court should not be reluctant to use its equity powers once a party has so clearly established its patent rights." *Smith International v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir. 1983). With this in mind, I now endeavor to consider each of the enumerated factors in the context of the equities of this case.

**1. Irreparable harm to Boehringer**

■ The parties disagree as to whether Boehringer will experience immediate irreparable harm if this Court denies Boehringer's request for a permanent injunction. Boehringer argues that "once the patentee establishes validity and infringement, immediate irreparable harm to the patentee is presumed." Boehringer Br. at p. 4. Boehringer also argues that it is currently "experiencing substantial and actual irreparable harm every day that Schering's infringing vaccine remains on the market." *Id.* Boehringer points to the loss of market share (which it argues is more significant in this case because the market for its vaccine is shrinking due to causes unrelated to this litigation), lost opportunity, loss of jobs, loss of benefit of its patent due to infringing research and loss of revenue which impacts Boehringer's research and development budget. *Id.* In response, Schering argues that Boehringer made these same arguments years ago but none of Boehringer's doomsday scenarios have played out to date and that, as this Court has already noted, Schering is a financially viable company which can compensate Boehringer for any losses it suffers.

At this time, Boehringer is indeed entitled to a presumption of irreparable harm. *Compare with, Boehringer I*, 984 F.Supp. at 262 (no presumption of irreparable harm where this Court found that Boehringer had not shown a likelihood of success on the merits); *Boehringer III*, 68 F.Supp.2d at 553 (same). The Federal Circuit has determined that irreparable harm is to be presumed when there is a clear showing of both patent validity and infringement. *Richardson v. Suzuki Motor Co.*, 868 F.2d at 1247. In *Richardson*, the Federal Circuit explained that this presumption of irreparable harm "derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irreparable harm." *Id.*

Without a doubt, a "clear showing" of validity and infringement is satisfied where those issues have been tried and the fact-finder has determined that the patent in question was infringed and is not invalid. Of course, the presumption of irreparable harm is rebuttable. *See Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed.Cir.1996); *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994). To rebut a presumption of irreparable harm, the infringer must clearly negate the finding of irreparable harm. *Polymer*, 103 F.3d at 975. Thus, this Court presumes now that Boehringer will be irreparably harmed by the continued infringement of its '778 Patent and this Court considers whether Schering has adequately rebutted this presumption of irreparable injury.[2]

In order to rebut this presumption of irreparable harm, Schering may prove that it has or will cease its infringing activity, that Boehringer has granted numerous licences such that it can be compensated for Schering's continued infringement, or that Boehringer delayed bringing suit thereby negating any presumption of irreparable

2. As discussed below, even without a presumption of irreparable harm, this Court

finds that the harm Boehringer will experience without an injunction is irreparable.

injury. *See Polymer*, 103 F.3d at 974. This list compiled by the Federal Circuit is not exhaustive, *id.* at 975 (noting that these exceptions or "similar exceptions" may rebut the presumption of irreparable harm), and Schering can offer other arguments and evidence in an attempt to rebut the presumption of irreparable harm. The Federal Circuit has recognized that:

> Because of the very nature of a patent, which provides the right to exclude, infringement of a valid patent inherently causes irreparable harm in the absence of the above or similar exceptions.

*Polymer*, 103 F.3d at 975. In this case, Schering does not rely on any of the arguments enumerated above; rather, Schering argues that Boehringer has not suffered any irreparable harm in the years that this case has been pending and that Schering is a viable company which will be able to compensate Boehringer for any losses it incurs. These arguments do not sufficiently rebut the presumption of irreparable harm which inures to Boehringer's benefit nor do Schering's arguments otherwise persuade this Court that Boehringer will not suffer irreparable harm in the absence of an injunction.

In *Boehringer I*, this Court held Boehringer was not entitled to any presumption of irreparable harm, that Boehringer had not adequately explained why monetary damages would be inadequate and that the loss of market share, goodwill and Boehringer's "shortened duration" arguments did not support the imposition of a preliminary injunction. In that opinion, however, this Court noted that the loss of revenue to Boehringer which effected Boehringer's research budget did weigh in Boehringer's favor. Since these findings in *Boehringer I*, a number of things have changed and some have stayed the same, but the bottom line is that Schering has not rebutted the presumption of irreparable harm in this case.

First, in contrast to the state of affairs in 1998 when *Boehringer I* was decided, at this time a jury has found that Boehring-

er's patent was not invalid due to obviousness, that Schering infringed Boehringer's patent and this Court has found that Schering has not proven the invalidity of the Patent due to inequitable conduct. Thus, unlike the situation faced in *Boehringer I*, Boehringer is now entitled to a presumption of irreparable harm. Second, unlike the situation faced in *Boehringer I*, there has been a greater illumination of Boehringer's claim that the '778 Patent may have a limited duration due to market factors as well as changes in technology. Indeed, Schering embraces Mr. Hays's testimony that Boehringer has lost some market presence because there has been a "dramatic decline in the swine market and therefore, customers decided against taking prophylactic measures such as utilization of vaccines." Schering Br. at p. 11. This Court appreciates that there is a declining market for the PRRS vaccine which may limit the duration of Boehringer's patent. Moreover, Schering has informed the Court that Bayer Corporation and other companies now market competing vaccines which will also affect the PRRS market. Therefore, it appears that the PRRS vaccine market is more competitive now such that the ability to compensate Boehringer for its losses will be more difficult to determine. These limitations on the commercial success of Boehringer's patent and the effective duration of its patent, even if not caused by Schering's conduct, is an indication that Boehringer's Patent has a shortened duration and thus, Boehringer's need to enforce its right to exclusivity is more acute at this time. *See Polymer*, 103 F.3d at 975 (holding that evidence that the infringer was not the principal or the sole cause of the patentee's lost sales does not rebut the presumption of irreparable harm); *Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701, 708 & 708, n. 7 (Fed.Cir.1997) (declining market supported finding of irreparable harm even where decline is not wholly attributable to infringer's conduct). As the Federal Circuit held in *Bell &*

*Howell*, when "the market for a patented product is in decline, the passage of time is particularly likely to irreparably harm the patentee." *Bell & Howell*, 132 F.3d at 708.

Third, the loss of revenue to Boehringer continues to weigh in Boehringer's favor as that loss of revenue limits Boehringer's research budget and limits its ability to compete in this ever-changing field. This harm to Boehringer is the type of harm which is linked directly to Schering's infringement which cannot be adequately compensated by money damages. Fourth, this Court notes that if an injunction does not issue at this time, Boehringer's reputation will be injured as it will be perceived as a company which is unable to enforce the exclusivity of its patent rights despite having proven liability and validity. For example, if it is perceived in the marketplace that Boehringer's inability to exclude others is based on Schering's argument that Boehringer's product is ineffective and unsafe, Boehringer's reputation will surely be irreparably harmed. Moreover, if this Court does not grant Boehringer's request for an injunction at this time, other would-be infringers will no doubt be invited to infringe on Boehringer's '778 Patent which would further erode Boehringer's market share and reputation.

Schering's argument that Boehringer has not suffered any irreparable harm during the pendency of this action does not adequately rebut this Court's finding of irreparable harm or the presumption of irreparable harm. Rather, the harm described above has and will continue to irreparably harm Boehringer in the absence of an injunction at this time. Schering's argument that monetary compensation can remedy Boehringer's injury is also rejected, as discussed above and immediately below.

Therefore, after considering all of the evidence presented to it and the jury, this Court is now convinced that Boehringer has, and will in the future, be irreparably harmed absent an injunction in this case and that Schering has failed to rebut this finding of irreparable harm or the presumption of irreparable harm to which Boehringer is entitled at this time.

### 2. Adequate Remedy at Law

Boehringer argues that "patent infringement has market effects that are never fully compensable in money." Boehringer Br. at p. 5 (*relying on Reebok Intern. Ltd.*, 32 F.3d at 1557). Boehringer relies on a statement by the Federal Circuit that "while monetary relief is often the sole remedy for past infringement, it does not follow that a money award is also the sole remedy against future infringement." *Id* (*relying on Atlas Powder Co. v. Ireco Chem.*, 773 F.2d 1230, 1233 (Fed.Cir. 1985)). Schering argues that it is a viable company which can adequately compensate Boehringer for any injury it incurs.

Where there is no question of future infringement and infringement and validity have already been determined, monetary damages are generally considered inadequate in patent cases. *See Shiley, Inc. v. Bentley Laboratories, Inc.*, 601 F.Supp. 964, 970 (C.D.Cal.1985), *aff'd*, 794 F.2d 1561 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987); *B & H Mfg.*, 22 U.S.P.Q.2d at 1552. As noted by the Federal Circuit:

> Without the injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution, to promote the progress of the useful arts, would be seriously undermined. The patent owner would lack much of the leverage, afforded by the right to exclude, to enjoy the full value of his invention in the market place. Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.

*Smith Int'l., Inc.,* 718 F.2d at 1577–78. This is not to say that money damages are never adequate but a finding that an infringer can fully compensate a patentee's losses does not alone justify a finding that the rebuttable presumption of irreparable harm has, in fact, been rebutted. *Polymer,* 103 F.3d at 976; *W.L. Gore,* 842 F.2d 1275 (granting a permanent injunction five years after trial on liability).

In this case monetary damages for continued infringement is not adequate relief to Boehringer. Although this Court has noted on at least two occasions that Schering is a large, financially secure company which will be able to compensate Boehringer for its losses, we are now close to the end of the road in this case and this Court must re-examine whether monetary damages will adequately compensate Boehringer for its losses incurred as a result of Schering's continued infringement. This re-examination is conducted in the context of the shifted burdens in this case; in *Boehringer I* and *Boehringer III,* Boehringer bore the burden of proving that it would suffer irreparable injury, in this instance, however, Schering bears the burden of rebutting the presumption of irreparable injury. As discussed above, monetary damages cannot adequately compensate Boehringer for its lost research opportunities due to the lost revenue income, its lost market share, difficulties calculating damages going forward and loss to its reputation at this time and in the future. Thus, this factor weighs in favor of granting a permanent injunction at this time.[3]

### 3. Public Interest

Boehringer argues that there is a strong public interest in protecting the integrity of the patent system and the exclusive rights which accrue to a patent holder.

Boehringer recognizes, however, that "a few courts have declined to enjoin an infringer in the rare circumstance where the patentee's failure to market the invention frustrates an important public need," but Boehringer argues that such a situation does not exist here. Boehringer Br. at p. 6.

In response Schering argues vigorously that

> there is a critical need for Schering's Prime Pac® vaccine to stay in the market and be available to pork producers to protect their herds against PRRS. Additionally, there is a critical need for Schering's Prime Pac® vaccine to be available to aid in further research to provide additional and more efficacious PRRS vaccines in the future.

Schering Br. at p. 4. Specifically, Schering argues that (a) Boehringer's vaccine can revert back to virulence such that some hog farmers may not use any PRRS vaccine if Schering's vaccine is taken off the market, (b) that Boehringer's vaccine has not been approved for use in seronegative animals whereas Schering's vaccine has been approved for such use, (c) Boehringer's vaccine, unlike Schering's vaccine, has been shown to have negative effects on boar semen quality, (d) that problems have been reported with Boehringer's vaccine given to pregnant sows and (e) other problems have been associated with Boehringer's vaccine. Schering Br. at pp. 5–6 and accompanying affidavits. Schering argues further that it is important to have as many different vaccines as possible on the market to combat the PRRS virus and that if an injunction is issued, Schering's research to develop a second generation vaccine that is more efficacious "may very well come to an end." Schering Br. at p. 8. Schering argues that "If it becomes

---

3. Moreover, Schering has disclosed in its recent submissions that it is actively conducting research to create a second generation vaccine to fight the PRRS virus. In the event that Schering is not enjoined and is successful in its research (even while Boehringer is also

successful in its continued research), the market share currently enjoyed by Boehringer may diminish. This loss to Boehringer could not be compensated by monetary damages as Boehringer would lose market share and suffer injury to its reputation.

established that only one company has the right to sell a commercial product for protection against the disease, research by other companies and within universities will likely become limited due to a lack of private research funds." Schering Br. at p. 9. Schering also argues that if an injunction issues, the "distribution of a PRRS vaccine to pork producers will be severely limited," because Boehringer's vaccine is available to farmers only through a veterinarian.

This is perhaps the most contested issue in this case. Before granting or denying a request for a permanent injunction, a court must consider where the public interest lies. In cases such as this, there are competing public interests. On the one hand, there is a public interest in protecting the integrity of the patent system and therefore, granting an injunction to ensure that a patentee has an exclusive right to its patent. On the other hand, in cases where the infringing product is valuable to the public-at-large, there may be a public interest in denying the injunction. The Federal Circuit has said:

Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief.

*Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1458 (Fed.Cir.1988) (holding that it was not an abuse of discretion to enjoin some products but not others); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862, 867–68 (7th Cir.1983) (noting that question is not whether the public will be served by an injunction but whether public will be disserved by an injunction); *see also City of*

*Milwaukee v. Activated Sludge,* 69 F.2d 577 (7th Cir.1934) (injunction refused where injunction would leave the entire "community without any means for disposal of raw sewage other than running it into Lack Michigan, thereby polluting its waters and endangering the health and lives of that and other adjoining communities"); *Neuromedical Systems, Inc. v. Neopath, Inc.,* 1998 WL 264845 (S.D.N.Y. May 26, 1998) (denying motion for preliminary injunction based, in part, on finding that public interest would be harmed by injunction). Therefore, this Court considers whether the public interest will be disserved by an injunction in this case.

Schering argues that its vaccine is the safest PRRS vaccine, that research is beginning to show that Boehringer's vaccine can revert back to virulence and that some pork producers have decided that they would rather not vaccinate their herds than use Boehringer's vaccine. While Schering presses these arguments on this Court, this Court cannot ignore the salient facts that Boehringer's vaccines have passed the rigorous safety requirements issued by the USDA and that Schering concedes that Boehringer controls approximately 70% of the PRRS vaccine market. *See* Schering Br. at p. 11, n. 4 (noting that Boehringer has approximately 70% of the market share). Without the USDA questioning the safety or efficacy of Boehringer's vaccines and with Boehringer's maintaining such a presence in the market, this Court seriously doubts the validity of Schering's claims. Moreover, Schering's safety arguments are undercut by its later argument that a synergistic effect occurs when both Schering's and Boehringer's vaccines are alternated in the same herd. This argument does not jibe with Schering's argument that Boehringer's vaccine poses a biological security risk.[4]

---

**4.** In addition, Schering states that Bayer Corporation markets a "killed" PRRS vaccine and that autogeneous vaccines are marketed by various companies. Autogeneous vaccines are killed vaccines developed for one specific herd on a single farm. Wasmoen Affid. at ¶ 4.

Assuming for purposes of this motion that this is true, if farmers choose not to use Boehringer's vaccine, farmers have alternatives available to them to vaccinate their herds from PRRS such that the public would not be disserved by an injunction against Schering at

Schering further argues that if it is precluded from growing the ATCC–VR2525 strain of the PRRS virus, its research to create a second generation vaccine "may very well come to an end." Schering Br. at p. 8. By enjoining all infringing activity, Schering is not precluded altogether from growing the ATCC–VR2525 strain. Rather, Schering is precluded from growing the ATCC–VR2525 strain of the virus in a manner which infringes the '778 Patent. To the extent that Schering's infringing research will come to an abrupt end upon the issuance of an injunction in this case, this is but an inevitable consequence of protecting Boehringer's patent rights and the inevitable consequence of the monopoly granted to patent holders. Although in areas outside of intellectual property, monopolies of this nature are traditionally shunned by American law, the Constitution and Title 35 of the United States Code make an exception for patent rights. *See* U.S. const. Art. 1, § 8, cl. 8 (Congress has the power to award "inventors the exclusive right to their . . . discoveries"); 35 U.S.C. § 154 ( granting a patentee the right to exclude others from making, using or selling the invention for a period of seventeen years). The effects of an injunction on Schering's continued research is not unique to this case, it is a natural consequence of the rights granted to Boehringer and is not of such a critical nature as to deter this Court from granting an injunction at this time. Boehringer has informed this Court that it is continuing to research the possibility of a second generation vaccine and this Court has no reason to doubt that Boehringer will undertake those efforts energetically.

This Court is not at all troubled by Schering's contention that an injunction will limit the availability of a PPRS vaccine

to the ultimate user because Boehringer's vaccine is available only through a veterinarian and is not available directly to hog farmers as Schering's vaccine is. This is not a case in which the need for a prescription and professional intervention is a serious impediment to access. In this case, we are dealing with a community of pork-producers and pig-owners which has ready access to veterinarians who, in turn, can prescribe and administer Boehringer's PPRS vaccines. Thus, this argument does not assist Schering in this case.

Schering also misses the mark with its argument that "If it becomes established that only one company has the right to sell a commercial product for protection against the disease, research by other companies and within universities will likely become limited due to a lack of private research funds." Schering Br. at p. 9. This is an example of the panic that often accompanies a threat of a permanent injunction. Contrary to what Schering would have this Court believe, this Court is not deciding today that Boehringer is the "only one company" which "has the right to sell a commercial product for protection" against PRRS; indeed, Schering recognizes that Bayer Corporation and other companies will continue to market commercial PRRS vaccines even if an injunction issues against Schering in this case. Moreover, this Court does not bestow upon Boehringer the right to control unilaterally all vaccines for PRRS, as Boehringer's right to exclude others from the PRRS vaccine market is only as broad as its patent rights which do not preclude other companies from introducing PRRS vaccines which do not infringe on Boehringer's '778 Patent. In granting an injunction, this Court is merely enforcing the

---

this time. Plainly the existence of other PRRS vaccines undercuts Schering's argument that if it is enjoined, the public would be disserved by having only one vaccine on the market.

Also, it is noted that in Schering's arguments challenging the safety and efficacy of

Boehringer's products, Schering does not impugn Boehringer's PRRS ATP vaccine which is and will continue to be commercially available to farmers seeking to immunize their herds from the PRRS virus.

monopoly granted to Boehringer as a patent holder in the United States.

Finally, in contrast to Schering's predictions of public injury if this Court grants Boehringer's request for a permanent injunction, this Court notes that Boehringer has submitted an affidavit of Mr. Fintan M. Molloy, the President and COO of Boehringer. Mr. Molloy is responsible for Boehringer's business "including production and marketing or Boehringer's [PRRS] vaccines." Molloy Affid. at ¶ 2. Mr. Molloy has assured this Court that:

> At present, Boehringer has significantly more than 50% of the United States PRRS market, and it has marketing and manufacturing capacity sufficient to manufacture and sell several times the amount of PRRS vaccines that it currently sells. Moreover, Boehringer regularly maintains at least several weeks backup inventory of all its PRRS products. Accordingly, Boehringer has ample capacity in both the short and long term to meet the demand for all licenses PRRS vaccines, and will be able to supply the market adequately upon Schering's withdrawal.

Molloy Affid. at ¶ 4. Schering has not challenged this representation and this Court finds that Boehringer's ability to supply the market with an adequate supply of its PRRS vaccines supports this Court's conclusion that the public will not be disserved by a permanent injunction in this case.

Thus, after careful consideration of Schering's arguments that the public interest will be harmed by the issuance of an injunction in this case, this Court concludes that this factor weighs in favor of granting a permanent injunction at this time.

### 4. Balancing of hardships

Finally, Boehringer argues that the equities weigh heavily in its favor because it will be irreparably harmed without an injunction and the harm to Schering's business must fall on deaf ears because the infringer has no right to infringe on the patentee's patented process and cannot be heard to complain when its infringement must come to an end. Boehringer's Br. at p. 6. Schering argues, as discussed above, that the public will be harmed by an injunction in this case and that if Schering is precluded from selling its Prime Pac® PRRS vaccine,

> Schering will lose the ability to provide pork producers with this full range of products. Moreover, the inability of Schering to sell a full line of respiratory disease products will irreparably injure its overall reputation in the animal health care market as a company that provides vaccines to pork producers for all major swine respiratory diseases. This loss of reputation is an intangible that cannot be measured.

Schering Br. at p. 12 (internal reference omitted).

This Court has already determined that Boehringer will suffer irreparable harm if an injunction is not issued at this time, that monetary damages would be an inadequate remedy for the continued infringement of Boehringer's patent, and that the public interest will not be disserved by the imposition of an injunction. The only issue left is for this Court to balance the hardships in this case. This Court does not dispute that Schering may suffer some harm to its reputation if it is enjoined from selling its PRRS vaccines, but this injury does not outweigh the other considerations in this case and thus, does not preclude this Court from granting an injunction in this case. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003, n. 12 (Fed. Cir.1986) (noting that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). As discussed above, after considering all of the evidence this Court has heard over the years, it is now clear that Boehringer has and will suffer irreparably injury absent

an injunction. The breadth and depth of this irreparable harm suffered by Boehringer significantly outweighs the harm which Schering may suffer when it must cease infringing Boehringer's '778 patent. Nor do any of Schering's public interest arguments tip the scales in favor of denying the permanent injunction in this case. Thus, this factor also weighs in favor of granting a permanent injunction against Schering.

In conclusion, this Court has weighed each of the factors and finds that each factor (as well as general equitable principles) supports the imposition of a permanent injunction in this case.

### C. *Schering's Motion for a Stay Pending Resolution of its Post-trial Motions*

■ Schering has moved for a stay of the permanent injunction during the pendency of its post-trial motions. A post-trial motion, whether filed pursuant to Rule 50 or 59, does not stay the execution of a judgment or an injunction. Rather, the party seeking a reprieve from the court's order must request a stay of that order pursuant to Rule 62(b) of the Federal Rules of Civil Procedure. That rule provides:

> In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60, or of a motion for judgment in accordance with a motion for a directed verdict made pursuant to Rule 50, or of a motion for amendment to the findings or for additional findings made pursuant to Rule 52(b).

Fed. R. Civ. Pro. 62(b); *see also for example Joy Technologies, Inc., A/S Niro Atomizer v. Flakt, Inc.,* 1992 WL 188814 (D.Del.1992) (holding that "Once a plaintiff has met its burden in showing that an injunction is necessary, no delay in the issuance of that injunction is appropriate absent extraordinary considerations. Here, there are no extraordinary circumstances or considerations, only the relatively standard post-trial motions."), *reversed on other grounds,* 6 F.3d 770 (Fed. Cir.1993), *modifying injunction,* 1994 WL 745884 (Fed.Cir.1994) (new injunction further tailored).

Schering concedes that the decision to stay the issuance of a permanent injunction is left to the sound discretion of this Court. The now-familiar questions to be examined are: (1) where the public interest lies; (2) whether issuance of the stay will substantially injure the other party of interest in the proceedings; (3) whether the applicant will be irreparably injured absent a stay; and (4) whether the stay applicant has made a strong showing that he/she is likely to succeed on the merits. *Standard Havens Products v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed.Cir. 1990).

As discussed above, Boehringer has shown that it will suffer irreparable injury without an injunction and the public interest will not be disserved by the imposition of an injunction in this case. These conclusions extend to the issue of whether a stay is appropriate in this case. Although Schering requests only a stay pending the resolution of its post-trial motions, it will take this Court some time to resolve those motions and Boehringer will suffer irreparable harm during the pendency of those motions. Namely, if Schering wants to pursue these motions, Boehringer will be given ample opportunity to respond to those motions and this Court will issue a written opinion resolving those motions. Thus, these motions will not be decided quickly enough that this Court can conclude that Boehringer will not suffer irreparable harm during the pendency of Scher-

ing's post-trial motions.[5]

With respect to Schering's argument that it has made a strong showing that it is likely to succeed on the merits of its post-trial motions, this Court will not pre-judge those motions. In light of Schering's motion for a stay, however, this Court notes that it has listened to the testimony during the trial in this case, is familiar with the legal and factual issues in this case and has read Schering's post-trail motions. After considering this wealth of information, this Court determines that Schering has not made a strong showing of success on those motion.

Based upon the findings made above, this Court hereby denies Schering's request for a stay of the permanent injunction pending adjudication of its post-trial motions.[6]

### D. *Scope of the Injunction*

Boehringer asks this Court to order a recall of all of Schering's infringing products and order Schering to refund those customers/distributors who would be required to return Schering's products to Schering. Boehringer Br. at p. 7. In response, Schering argues that if this Court imposes a permanent injunction, the scope of that injunction should not include an order to recall all of Schering's vaccines which are already on the market. Boehringer, in turn, explains that it seeks two types of recalls in this case; a mandatory recall and a voluntary recall. First, Boehringer requests a mandatory recall of all of the infringing products which Schering currently owns. Second, Boehringer requests a voluntary recall of "products not owned by Schering, but in the possession of its distributors and customers." Letter of J. Gordon to Court of July 11, 2000.

The scope of an injunction is left to the sound discretion of the court and may include an appropriate recall of infringing goods. *Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1354 (Fed.Cir. 1998) (scope of injunctive relief is reviewed for abuse of discretion); *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 646

---

5. Although in *Boehringer III* this Court held that Boehringer's risk of irreparable harm was de minimis during the time between when that opinion was issued and the resolution of the rights flowing from the '778 Patent, *see Boehringer III*, 68 F.Supp.2d at 553, this Court now has a better understanding of the irreparable harm that Boehringer has and will suffer without an injunction even during the period of time it will take this Court to rule on Schering's post-trial motions.

6. Although not raised by either party, this Court finds that Boehringer need not post a bond in this action to secure the issuance of the permanent injunction.

As this Court is now issuing a permanent injunction against Schering and a Judgment which, even Boehringer concedes, will meet the requirements for an immediate interlocutory appeal under 28 U.S.C. § 1292(c)(2), Schering must notify this Court as to whether it intends to pursue its post-trial motions before this Court or appeal the liability judgment directly under section 1292(c)(2). Essentially, because a pending Rule 50 and 59 motion divests the Federal Circuit of appellate jurisdiction over an otherwise appealable interlocutory judgment under 28 U.S.C. § 1292(c)(2), *see Jurgens v. McKasy*, 905 F.2d 382 (Fed.Cir.1990) (motion to amend judgment filed within ten days of judgment relieved appellate court of jurisdiction), this Court asks that Schering inform the Court whether it intends to file an immediate appeal of this judgment or whether it will seek resolution of is post-trial motions before this Court. In either event, the Court also needs to know whether Schering wants this Court to stay a trial on damages. *See* Second Amended Complaint at ¶ D (seeking damages), ¶ E (seeking an account), and ¶ F (seeking trebled damages); *see also In re Calmar, Inc.*, 854 F.2d 461 (Fed.Cir.1988) (recognizing that court may proceed with damages hearing during appeal in patent case or court may stay that hearing under Rule 62). Of course, Schering may also appeal the grant of the permanent injunction issued today and seek a stay of that injunction. This Court expresses no opinion on what course of action Schering can and should take at this juncture; rather, the Court seeks direction from Schering as to how it wants to proceed at this time. It would be appreciated if Schering could inform the Court and Boehringer of its intentions as soon as practicable, mindful of Schering's rights and obligations timewise under the rules of practice.

F.2d 800, (2d Cir.1981) (recognizing the broad power of federal courts to fashion appropriate relief); *Rohm and Haas Co. v. Cumberland Chemical Corp.*, 220 U.S.P.Q. 978 (S.D.Texas 1983). However, a court must be mindful that an injunction is not a punitive measure. *Joy Technologies, Inc.*, 6 F.3d at 772–73.

With respect to Boehringer's request for a mandatory recall of all infringing goods which Schering still owns regardless of where those goods are currently located, this Court grants that request. Simply put, to allow others to sell infringing goods which Schering still owns is no different than if Schering continued to sell its own infringing products. Because this case has been pending for several years and Boehringer has been irreparably harmed during the pendency of this action, it is incumbent upon this Court to grant swift and complete relief to Boehringer to prevent, within reason, the continued harm it will experience. *See Perfect Fit*, 646 F.2d at 807. Given the breadth and nature of Boehringer's harm in this case, Schering will be ordered to recall from its distributors all infringing products which Schering still owns.[7]

With respect to Boehringer's request for a voluntary recall of those infringing products which are no longer owned by Schering but which are in the stream of commerce either in the hands of Schering's distributors or customers, this Court also grants Boehringer's request. Boehringer's proposed voluntary recall notice informs the recipient that Schering has been enjoined from further production of its PRRS vaccines, that Schering will not fill any orders for the infringing products and:

> For a period of thirty (30) days from the date of this letter, you may return any Prime Pac® products previously purchased by you from Schering for a full refund, including freight. Instructions

on how to return Prime Pac® products to Schering are enclosed.

Exhibit B to Boehringer's Proposed Judgment. This proposal is not unreasonable. It does not require the return of all products which are not now owned by Schering but to the extent that Schering's customers and distributors choose to return the infringing goods to Schering for a refund, some of the harm that Boehringer suffers will be terminated. Thus, this Court grants Boehringer's request for a voluntary recall.

### E. *Discovery Dispute*

Boehringer seeks in its letter dated July 11, 2000 that this Court impose sanctions against Schering for its alleged failure to inform Boehringer that it has been growing viruses other than the VR–2525 virus. Specifically, Boehringer argues that Schering "was required to identify which viruses were being grown with Boehringer's process," Schering only identified the VR–2525 virus but now Schering admits to growing other viruses with Boehringer's process. Schering has not responded to these allegations. It is not clear from Boehringer's allegation that Schering has, in fact, violated any discovery order in this case. If Boehringer wishes to pursue this line of inquiry, Boehringer is directed to file a request for sanctions with Magistrate Judge Chesler on or before August 21, 2000. After reviewing Boehringer's submission, Judge Chesler will determine if further briefing and/or argument is needed and, if necessary, will arrange an appropriate briefing and/or argument schedule. Unless otherwise determined by this Court, this discovery matter is referred to Magistrate Judge Chesler for resolution.

### F. *Conclusion*

Having determined that a permanent injunction is warranted in this case and that Schering's has not borne its burden of

---

7. Notably, Schering does not object to the imposition of a recall on the grounds that it would be too costly to recall its infringing products. Accordingly, this does not factor into this Court's analysis.

establishing that a stay of that injunction is warranted, this Court hereby enters the attached permanent injunction and partial recall of Schering's infringement of the '778 Patent.