NEWMAN, Circuit Judge,
dissenting.
The America Invents Act permits but does not require the district court to stay earlier-filed litigation during later-requested post-grant PTO proceedings. Such a stay is not obligatory, but is consigned to the district court’s discretion. During consideration of the proposed post-grant review legislation, there was extensive debate about the relation between concurrent infringement actions in the courts and post-grant patentability redeterminations in the PTO. After eight years of discussion, the America Invents Act adopted rules for concurrent proceedings in various circumstances. No statute or rule requires the district court to stay ongoing court proceedings after a petition for post-grant review is filed in the PTO. My colleagues’ contrary ruling today is also contrary to the legislation and its purpose.
The decision of a trial judge not to stay an infringement action in litigation, when the defendant requests a stay but the plaintiff wishes to proceed, is consigned to the discretion of the judge. Here the plaintiff objected to the stay and the district court exercised its discretion and denied the stay. Nonetheless my colleagues reverse the district court and grant the stay, although it is not shown that the district court abused its discretion.
The district court may choose to stay its proceedings when the interest of justice warrants, and the ALA lists several factors for the court to consider in deciding how to exercise its discretion in a particular case. However, a stay of litigation is not available as a matter of right when a petition for post-grant review is filed in the PTO.[1] See Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 850, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (“Article III, § 1 preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States.... ”).
In this case, the district court applied the traditional stay factors as recorded in AIA Section 18(b), and ruled that stay of the ongoing judicial proceeding was inappropriate. The district court exercised its discretion to continue with the trial, which was on a fast track to completion. This ruling is well within the district court’s statutory and discretionary authority.
Although the Covered Business Method (CBM) statute provides that appellate review of a district court’s decision to grant or deny a stay “may be de novo,” when the district court’s decision is within its range of discretion, it warrants appellate respect. My colleagues on this panel do not identify any abuse of the district court’s discretion; nor do they acknowledge the deference owed to a trial judge in rulings on matters of equity and the balance of interests.
I respectfully dissent.
Discussion
A stay is an “intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant.” Nken v. Holder, 556 U.S. 418, 427, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). Section 18(b)(1) of the America Invents Act authorizes the district court to stay the litigation of a patent for which CBM review in the PTO has been requested. Such a stay is not *1322 automatic; the statute authorizes the district court in its discretion to stay its proceedings, on taking into account certain equitable factors as may exist in the particular case.
In today’s ruling the panel majority overrides the district court’s discretion, and effectively creates a rule that stays of district court litigation pending CBM review must always be granted. Here the district court carefully considered the four factors set out in the statute, and concluded that VirtualAgility is likely to be harmed disproportionately in both the litigation and the marketplace if the defendants are allowed to draw out this case for an extended period, all the while continuing to infringe a presumptively valid patent. The district court considered the phase of the litigation, the completion of document production and much of discovery, and the early trial date, and exercised its discretion to proceed with the trial proceedings. Whether or not my colleagues’ prolongation of the dispute by way of a potential multiplicity of administrative trials and appeals can be defended,' the district court’s evaluation of the equities is reasonable, is consistent with the analyses by other district courts, and warrants deference.
The near automatic grant of litigation stays today engrafted onto the statute tilts the legislated balance, for the statute recognized that a stay pending CBM review may, depending on the circumstances, lead to inequity and tactical abuse. See Tuitionfund, LLC v. SunTrust Banks, Inc., 2012 WL 4758382, at *1 (M.D.Tenn. Oct. 5, 2012) (“Further, there may be tactical advantages to the Yesdia Defendants in seeking a stay, the most apparent being delay.”); Bausch & Lomb Inc. v. Rexall Sundown, Inc., 554 F.Supp.2d 386, 389 (W.D.N.Y.2008) (“Resort to the reexamination procedure should not be sanctioned through the issuance of a stay, however, where it is pursued for tactical advantage after substantial and costly discovery has been conducted or where trial is imminent.”).
Successive proceedings can add extensive delay to final resolution, while the patent life continues to expiration. The district court emphasized the heavy impact of delay on this patentee. Deference is owed to the district court’s assessment, for the trial court is in a better position than either the PTO, or this court, to attune a request for stay to the particular situation.
The district court has discretionary authority to manage its cases, as well as to consider equitable factors. The Supreme Court has recognized this authority, see Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (discussing power and circumstances of stay of proceedings, stating that: “Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.”), as has the Federal Circuit, see Viskase Corp. v. American National Can Co., 261 F.3d 1316, 1328 (Fed.Cir.2001) (“The court is not required to stay judicial resolution in view of the reexaminations.”). Indeed, the party appealing denial of a stay historically faced a steeper burden because the appeal seeks “interference by an appellate court with management of proceedings entrusted to the district court.” Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983).
Congress did not change this precedent in the America Invents Act, when it directed the courts to apply the established precedent of litigation stays to the vast variety of possible situations in overlapping district court and PTO post-grant proceedings.
In Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., — U.S.-, 134 S.Ct. *1323 1744, 188 L.Ed.2d 829 (2014), the Supreme Court discussed the rationale for abuse of discretion review in the context of the Patent Act’s fee-shifting provisions. The Court stated that as a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional because it has lived with the case over a prolonged period. The Court observed that the fee shifting question is “multifarious and novel,” and not susceptible to “useful generalization” of the sort that de novo review provides, but is more “likely to profit from the experience that an abuse-of-discretion rule will permit to develop.” Id. at 1748-49.
The Court’s reasoning in Highmark applies forcefully to a district court’s exercise of discretion in deciding whether to stay pending litigation despite the patentee’s objection. The inquiry created by the AIA’s four factor test is highly fact specific, not susceptible to “useful generalization;” the district court is better positioned to decide whether a stay serves the best balance of interests of the parties and the court. My colleagues on this panel ignore this reality.
Depending on the stage of the litigation, as the AIA provides, a court may conclude, within its discretion, that “the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.” Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., 922 F.Supp.2d 486, 494 (D.Del.2013). Several courts have expressed concern that a stay will interfere with their ability to manage their dockets and fulfill their judicial responsibilities. For example, in response to a requested stay pending reexamination, a district court recently stated:
The Court is concerned that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation “to secure the just, speedy, and inexpensive determination of every action.” Fed.R.Civ.P. 1. “If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.” Comcast Cable Commc’ns Corp., LLC v. Finisar Corp., No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D.Cal. Apr. 5, 2007). This consideration weighs against a stay.
Universal Elecs., Inc. v. Universal Remote Control, Inc., 943 F.Supp.2d 1028, 1035 (C.D.Cal.2013). The panel majority does not acknowledge these concerns.
AIA Section 18(b) lists four factors relevant to evaluation of a stay request. In this case the district court conscientiously applied this framework, and on consideration of the nature of the patent, this case’s trial schedule, and the competitive relationship between the parties, the court concluded that the potential benefits of a stay are outweighed by the harm that VirtualAgility is likely to experience, in both the litigation and the marketplace, if a stay were granted.
The district court’s analysis of the four factors represents a consistent application of precedent, and neither the appellants nor the panel majority have shown that the balance reached by the court is an abuse of discretion. I briefly review the four statutory factors set forth in AIA section 18(b)(1):
“(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial”
The district court found that “[t]his factor is essentially neutral, if not slightly against, granting a stay.” VirtualAgility, Inc. v. Salesforce.com, Inc., 2014 WL 94371, at *5 (E.D.Tex. Jan. 9, 2014) (“DCt. Op.”). The court emphasized “the thoroughness of the PTO’s prior examination of the '413 patent, during which time more *1324 than sixty prior art references were considered,” contrasting it to “more common business method patents” which Congress explained “have not been thoroughly reviewed at the PTO due to a lack of the best prior art.” Id. at *3. The court stated that it was not persuaded that the single prior art reference at issue in this CBM review would invalidate all or a substantial number of the asserted claims, and as a result the court would almost certainly need to consider other prior art references, including two which appellants have alleged are “of particular importance.” Id.
The district court was also not persuaded that the PTAB would be likely to cancel all claims of the '413 patent under § 101, citing “even greater uncertainty with respect to the PTAB’s § 101 determination.” Id. at *4. The court concluded that it was “not convinced that granting a stay will simplify the issues in this case.” Id. at *5.
The district court correctly recognized that if one claim were to survive CBM review, a stay would not simplify the litigation issues in this case. There would still be full litigation of invalidity issues; the elimination of one reference of the almost fifty references that the defendants placed at issue in the district court would not simplify this case. In addition, the defendants in the district court litigation raised invalidity defenses under sections 103,112, and 256, whereas the CBM proceeding involves only sections 101 and 102. Unless each and every claim is invalidated in the CBM review, the district court was correct that a stay will simply increase the burden on the parties.
The majority states that it reached its decision on this factor without considering possible amendment to the claims. The PTO record states that VirtualAgility’s proposed amendments “are strictly contingent on the Board finding each respective original independent claim unpatentable.” Patent Owner’s Contingent Motion to Amend, Dkt. No. 137-1. The district court undertook a detailed review of the proposed amendments, and concluded that in the unlikely event the amendments would affect the court’s claim construction, supplemental claim construction could be considered. The court stated:
Inconsistency would only arise under the narrow contingency that this Court sides with Defendants in construing ‘processor’ and ‘storage device,’ and the PTAB adopts Plaintiffs proposed substitute claim 28 after finding that the original claim 7 is unpatentable. If this does occur, the Court will consider holding a supplemental claim construction on these two terms to resolve the conflict. In any event, the proposed amendments would not alter the construction of the remaining seven disputed claim terms.
VirtualAgility, Inc. v. Salesforce.com, Inc., 2014 WL 807588, at *6 n. 1 (E.D.Tex. Feb. 27, 2014).
In sum, the district court fully and fairly considered whether the stay would simplify the issues and streamline the trial, and concluded that it was not likely to do so.
“(B) whether discovery is complete and whether a trial date has been set”
The district court discussed the stage of document production and depositions, which were proceeding toward a trial date of November 2014, but were not yet complete. Precedent illustrates the reluctance of district courts to stay litigation that is well advanced. See Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 2014 WL 121640, at *2 (N.D.Cal. Jan. 13, 2014) (timing factor weighs against stay when trial date is thirteen months away and “discovery is well underway with the parties having exchanged initial disclosures, infringement and invalidity contentions, and some document productions”); ImageVision.Net, Inc. v. Internet Payment Exch., Inc., 2013 WL 663535, at *3-4 (D.Del. Feb. *1325 25, 2013) (timing factor weighs against stay when claim construction hearing and close of fact discovery are four and five months away respectively, even though no trial date set); Universal Elecs., Inc., 943 F.Supp.2d at 1031 (timing factor weighs against stay when, although little discovery had occurred, trial date was twelve months away and court had expended substantial effort construing the claims).
The panel majority states that generally the time of filing the motion to stay is the relevant time to measure the stage of litigation. Maj. op. at 1318. The majority cites three district court cases in which the timing of filing the motion was mentioned, but in those cases there is no apparent difference in the state of discovery etc. between when the motion was filed and when it was decided. See, e.g., Norred v. Medtronic, Inc., No. 13-2061, 2014 WL 554685, at *2 (D.Kan. Feb. 12, 2014) (granting stay when “[ljittle discovery other than initial disclosures and some preliminary document discovery has been exchanged. No depositions have been taken, no interrogatories have been served, and no expert reports have been exchanged”). In Boston Scientific Corp. v. Cordis Corp., 777 F.Supp.2d 783, 789 (D.Del.2011), the timing of the motion was discussed only with respect to the prejudice factor.
In general, district courts consider the current stage of litigation in analyzing this factor. See, e.g., Hansen Mfg. Corp. v. Enduro Sys., Inc., 2012 WL 381238, at *1 (D.S.D. Feb. 6, 2012) (“The parties are currently in the discovery phase of litigation. They have provided their infringement contentions and invalidity contentions to one another.”); Forgent Networks, Inc. v. EchoStar Techs. Corp., 2006 WL 6922224, at *2 (E.D.Tex. Nov. 20, 2006) (“The parties have already produced over five million pages of documents in this case and the discovery deadline is less than four months away. In addition, the parties have also fully briefed and argued the claim construction issues, and the Court is currently working on its claim construction order.”); Soverain Software LLC v. Amazon.com, Inc., 356 F.Supp.2d 660, 663 (E.D.Tex.2005) (“The parties have already produced hundreds of thousands of pages of documents and millions of lines of source code and should complete discovery next month. As previously mentioned, the parties have also fully briefed and argued the claim construction issues, and the Court is currently working on its order construing the claims at issue.”).
The panel majority has acknowledged that the district court need not rule on a stay motion before the PTAB has actually instituted the CBM proceedings, and that the district court is not obligated to “freeze” the litigation proceedings while the PTAB is considering whether to proceed. Maj. op. at 1317. It cannot be correct to hold that all interim activity must be ignored, and the stay decided as if nothing had occurred.[2] Such a rule contravenes the principle that when “the Court and the parties have already expended significant resources on the litigation, the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.” Mkt.-Alerts Pty. Ltd., 922 F.Supp.2d at 494; see also Rensselaer Polytech. Inst. v. Apple Inc., No. 13-cv-0633, 2014 WL 201965, at *5, 8 (N.D.N.Y. Jan. *1326 15, 2014) (denying stay, without prejudice to renewal of request after PTO action on petition for inter partes review); TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp., No. 13-cv-2218, 2013 WL 6021324, at *4-5 (N.D.Cal. Nov. 13, 2013) (denying stay pending inter partes review, observing that stay is never obligatory, but may be justified “where the outcome of the reexamination would be likely to assist the court”); Boston Scientific, 111 F.Supp.2d at 789 (denying stay, explaining that the stage of litigation clearly cuts against a stay because discovery was complete, and stating that the reexamination is “fraught with the potential for multiple appeals”).
“(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party”
The district court held that the prejudice factor “weighs heavily against granting a stay.” DCt. op. at *7. The district court explained that courts are reluctant to stay proceedings where the parties are direct competitors, and observed that the “loss of market share and consumer goodwill is particularly high in the growing market of enterprise cloud-computing, where contractors and governmental agencies are developing lists of preferred vendors.” Id. at *6 (citing Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 975-76 (Fed.Cir.1996) (‘Tears after infringement has begun, it may be impossible to restore a patentee’s ... exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers.”)).
The district court found that Salesforce and VirtualAgility compete in the same market and the same customer base, and stated that VirtualAgility, a small company with limited resources, “will be ‘forced to compete against products that incorporate and infringe’ its own invention.” DCt. op. at *6 (quoting Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1344 (Fed.Cir.2013)). The court concluded that granting a stay would unduly prejudice VirtualAgility both in the marketplace and in this litigation.
The district court found that Salesforce and VirtualAgility “directly compete in at least the enterprise cloud computing market targeting public sector entities.” DCt. op. at *6. The panel majority states that there was no evidence of direct competition. That is contrary to the record.
VirtualAgility’s President and Chief Executive Officer stated that he has “personally had conversations with VirtualAgility customers and potential customers in which the customer or potential customer compares the functionality of VirtualAgility’s products with that of Salesforce’s products.” Declaration of Stuart E. Rudolph (June 19, 2013) at J.A. 317. He stated that those customers include federal and state agencies, which he identified. Id. The district court did not clearly err in finding that the parties directly compete in the enterprise cloud computing market targeting public sector entities.
The panel majority acknowledges the district court’s undue prejudice findings, but gives them scant weight. Instead, my colleagues fault VirtualAgility for not moving for a preliminary injunction. Maj. op. at 1320. The district court presented a perceptive analysis of this position:
A party’s decision to seek or not seek a preliminary injunction often rests upon a variety of factors, including that party’s resources, the uncertainty of the outcome, or as part of an overall strategy to streamline the process and focus on other procedural steps in the litigation. Not being in a role to judge the parties’ litigation strategy, the Court deems it unfair to hold VirtualAgility to *1327 a position based upon what is no more than a dubious implication.
DCt. op. at *7.
A preliminary injunction proceeding often delays the litigation, and it is a truism that interim relief is not easy to obtain. The district court did not abuse its discretion in declining to hold VirtualAgility’s reasonable choice against it. See Zillow, Inc. v. Trulia, Inc., 2013 WL 5530573, at *6-7 (W.D.Wash. Oct. 7, 2013) (collecting eases on the significance of failure to seek a preliminary injunction).
The district court here gave weight to VirtualAgility’s small size and limited resources, the competitive relationship between the parties, and the high potential for loss of market share and consumer goodwill in the market in which they compete. The court concluded that a stay may cause “outsized consequences” to VirtualA-gility. DCt. op. at *5. The district court reasonably weighed the undue prejudice factor heavily against granting a stay.
“(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court”
With the stay now imposed by my colleagues, VirtualAgility will undergo an inter partes trial in the PTAB on some, but not all, of the invalidity issues that the defendants raised in the district court. Whichever side loses in the PTO then has the right first to request reconsideration by the PTAB, and then the right of judicial review of the PTO decision. Unless all of VirtualAgility’s patent claims are finally eliminated in the PTO and that ruling sustained on appeal, the procedure could be repeated in the district court. The district court has discretion to consider this tactical reality, in exercising its discretion to weigh the burden of litigation on the parties and the court.
It is apparent that the district court did not abuse its discretion in weighing and balancing the statutory factors and declining to stay its proceedings.
Conclusion
The panel majority has imposed greater rigor on “stay” considerations than the statute warrants. Post-grant review in the PTO is a useful tool, but the principle of post-grant review does not require elimination of judicial discretion to proceed with pending litigation. Indeed, the America Invents Act contemplates such discretion. I must, respectfully, dissent from my colleagues’ distortion of the statutory plan.

. Compare 28 U.S.C. § 1659(a), giving a party in district court the absolute right to a stay when there is a concurrent action in the International Trade Commission, provided only that the stay request is made 30 days after the party is named as a respondent, or 30 days after the district court action is filed, whichever is later.

. In some jurisdictions, the district court case may have received major effort in the interim. It is reported that for patent litigation cases filed in the fast track Eastern District of Virginia between 2000 and 2010 the average trial was completed less than a year after the case was filed. Mark Lemley, Where to File Your Patent Case, 38 AIPLA Q.J. No. 4, at 1 (Fall 2010). Compare this to the six months allocated for the PTO's initial decision of whether to institute CBM proceedings at all.